In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1456

TAURUS ZAMBRELLA,

*Petitioner*,

*v.*

UNITED STATES OF AMERICA,

*Respondent.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:00-CR-197—**James T. Moody**, *Judge.*

ARGUED NOVEMBER 5, 2002—DECIDED MAY 5, 2003

Before FLAUM, *Chief Judge*, CUDAHY, and COFFEY, *Circuit Judges.*

COFFEY, *Circuit Judge.* On October 16, 2001, Defendant Taurus Zambrella was convicted by a jury of two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and one count of stealing firearms from a licensed business dealing in firearms, in violation of 18 U.S.C. § 922(u) and 18 U.S.C. § 2. The district court sentenced Zambrella to 293 months in prison on the two felony in possession charges, and 120 months in prison on the theft of a firearm charge (sentence terms to run concurrently). Zambrella seeks reversal of his conviction on the basis that the trial court improperly denied him a *Franks* hearing to test the validity of the search warrant

affidavit. Alternatively, Zambrella urges this court to remand his case for re-sentencing because the district court "should have given [Zambrella] an additional opportunity to obtain transcripts of the [prior state] plea hearing . . .," which he claims would have allowed him to prove, prior to sentencing, "that he [wa]s not an armed career criminal." Zambrella's Br. at 21. We affirm.

I. Background

On August 13, 2000, Sergeant Joel Whalen of the Manteno, Illinois, Police Department arrested Taurus Zambrella on felony charges and transported him to the Kankakee County Jail. While in jail, Zambrella used the telephone to make a number of phone calls, each of which was recorded on audio tape by the authorities. Seeking to identify another individual believed to be involved in the crime, Whalen interviewed Zambrella while he was in custody and, after his (Zambrella's) release, reviewed the master tape containing his outgoing phone calls.

In one conversation recorded on the audio tape, Whalen heard a male individual conversing with a female about "his" (the speaker's) guns located in his apartment. Based on his recent arrest and interview of Zambrella, Sergeant Whalen believed one of the voices on the tape to be that of Zambrella and further investigation revealed that the recipient of the phone call was Zambrella's wife.

In initiating the process of obtaining a warrant to search Zambrella's apartment (located in Gary, Indiana), Whalen's co-worker, Detective Bill Mort, contacted Detective John Meznarick of the Lake County, Indiana, Sheriff's Department. Mort told Meznarick about the taped telephone conversation, and informed Meznarick that Lieutenant Walling from the Kankakee County Sheriff's Office had identified Zambrella as the person whose voice was on the

cassette tape. On August 21, Whalen delivered the cassette tape to Meznarick, and furnished Meznarick with the address of Zambrella's residence in Gary.

After listening to the tape of the telephone conversation recorded at the Kankakee County Jail, and relying on the information imparted to him by the Kankakee County police officers (date of phone call, identification of Zambrella as phone caller), Meznarick prepared a written affidavit in support of the application for a warrant to search Zambrella's residence. On August 23, 2000, Meznarick personally presented the affidavit to a judge *pro tem* in the Lake County Superior Court who, after reviewing the application and affidavit, issued a warrant to search Zambrella's residence.

Meznarick and other officers executed the warrant on August 24, 2000. During the search of Zambrella's home, officers seized two guns—a .20-gauge double-barrel shotgun and a Bushmaster .223 caliber semi-automatic rifle. The weapons were thereafter traced to a burglary of a federally-licensed firearms dealer on July 10, 2000. Zambrella was ultimately charged with five counts of weapons violations.[1]

Before trial, Zambrella moved to suppress the evidence obtained pursuant to the search warrant, arguing that the police lacked probable cause to search his residence because two of the facts set forth in the search warrant (the date of the phone call and the name of the officer who identified Zambrella as the caller) were later deter-

---

[1] Only three of the counts (the two felony in possession of a firearm counts and one theft of a firearm count) proceeded to trial. Two of the original five charges were dismissed by the court on motion of the prosecutors.

mined to be in error.[2] After conducting a thorough, two-day evidentiary hearing concerning the affidavit, during which Detective Meznarick, Lieutenant Walling, and Sergeant Whalen testified, the court made the following finding: "all the credible evidence [presented at the hearing, establishes] . . . [that the] affidavit seeking the issuance of the search warrant[ ] w[as] properly done." Supp. Hr'g Tr. at 45.[3] The court expressly "adopt[ed] the position of the Government" that any errors contained in the affidavit were "not fatal," and, moreover, that, although there may have been an "error in communication" between the police officers involved in the Zambrella investigation, there was certainly "no deliberate act on [the part of] Detective Meznarick [the affiant] or anyone else [involved in the investigation" to include inaccurate information in the affidavit. *Id.* at 34-35, 45.

Despite the court's explicit finding that the affidavit supporting the search warrant was proper and valid, Zambrella once again renewed his complaint about the affidavit at a later pretrial conference, requesting a *Franks* hearing to test its truthfulness. Pretrial Conf. Tr. at 4. The court denied the request for a *Franks* hearing, ruling that the issues raised in connection with the affidavit's inaccuracies had been resolved during the prior two-day suppression hearing. *Id.* at 5-6. The case proceeded to trial before a jury. On the second day of trial, Zambrella

---

[2] It was determined that the two facts (date and name of the officer) were inaccurately relayed to Officer Meznarick by police officers from Kankakee County.

[3] References to the suppression hearing transcript are herein denoted "Supp. Hr'g Tr.," while references to the transcript of the 1990 plea hearing are denoted "1990 Plea Tr.," citations to the transcript of the pretrial conference are referred to as the "Pretrial Conf. Tr.," and citations to the sentencing hearing are denoted, "Sentencing Hr'g Tr."

renewed his motion for a *Franks* hearing, but the district court denied the same, ruling that motion had "already [been] ruled on [and denied]. . . ." Oct. 16, 2001 Trial Tr., at 47-48.

After a two-day trial, the jury found Zambrella guilty of two felony in possession (firearm) charges, as well as the theft of (two) firearms charge. At the sentencing hearing on February 14, 2002, the Government argued that the sentencing judge should apply an "armed career criminal" enhancement pursuant to U.S.S.G. § 4B1.4 and 18 U.S.C. § 924(e). Under the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e) (the "Act"), the sentencing enhancement applies if: (1) the offense of which the defendant has been convicted is a violation of 18 U.S.C. § 922(g) and (2) the defendant has at least three prior convictions for a "violent felony" or "serious drug offense." The Government presented evidence of three prior relevant convictions, only one of which was disputed by Zambrella.[4]

The disputed conviction occurred in the year 1990 when Zambrella was charged in Illinois with two drug violations: (1) possession of cocaine and (2) possession of cocaine with intent to deliver. The simple possession count was *nolle prosequied* before trial and Zambrella pled guilty to the second count—possession of cocaine with intent to deliver. At sentencing, Zambrella argued that he had pled guilty only to the simple possession charge (rather than possession with intent to deliver cocaine), while on the other hand, the Government maintained that he pled guilty to possession with intent to deliver (cocaine). Thus, the question before us is whether Zambrella's 1990 state conviction was for mere possession rather than possession with intent to deliver cocaine.

---

[4] Because Zambrella only challenged the prior conviction for possession of cocaine with intent to deliver, we need only discuss that conviction.

Under 18 U.S.C. § 924(e), "serious drug offense" is defined as follows:

> an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. §802)), for which a maximum term of imprisonment of ten years or more is prescribed by law . . . .

18 U.S.C. § 924(e)(2)(A)(ii).

Thus, if the prior conviction had been for simple possession only, as Zambrella argued before the sentencing court, Zambrella would have been ineligible for the "armed career criminal" enhancement.

To support the Government's contention that Zambrella's 1990 conviction was for possession of cocaine with intent to deliver, the Government presented the sentencing court with a plethora of evidence, including certified copies of the Circuit Court of Cook County's criminal information, sentencing order, docket sheet, and notification of final disposition. The certified copy of the 1990 criminal information reflected that "Count No. 1" was a simple possession charge, and that the second count was for "possess[ion] with intent to deliver . . . cocaine . . . ." Government's Ex. 1. And, according to the certified copy of the 1990 Cook County docket sheet, the "order entered" by the Cook County Circuit Court, on the date of the sentencing (May 18, 1990), was as follows: "Co 1-Nolle, Co 2-4 yrs. prob." See Government's Ex. 4. The certified copy of the sentencing order set forth that the charge for which Zambrella was sentenced was "P.C.S. W/INT"[5] and the term of the sentence was "probation for a period of 4

---

[5] "P.C.S. W/INT" is apparently a short-hand reference to "possession of a controlled substance with intent to deliver."

yrs." See Government's Ex. 5. The notification of final disposition, meanwhile, confirmed that Zambrella's 1990 sentence was "4 yrs. prob.," but did not specifically recite the nature of the charge. See Notification, Government's Ex. 6.

Zambrella argued to the district court that the Government's evidence regarding the nature of the 1990 conviction was not conclusive. Specifically, he complained that the criminal information did not explicitly label the possession with intent to deliver charge as "count two," and that it was therefore unclear whether he was in fact convicted of that charge. Zambrella also claimed that the absence of the charge from the state court's notification of final disposition created some doubt as to which of the 1990 charges ultimately resulted in a conviction.

The court was satisfied that the certified documents presented by the Government were authentic and convincing, and concluded that the 1990 conviction was for possession of cocaine with intent to deliver (Ill.Rev.Stat. 1991, ch. 56½, par. 1401). The court denied Zambrella's motion for a continuance of the sentencing.

## II. Analysis

A district court's denial of a defendant's request for a *Franks* hearing is reviewed for clear error. *United States v. Roth*, 201 F.3d 888, 891 (7th Cir. 2000). A decision to deny a motion for continuance of sentencing is reviewed for an abuse of discretion. *United States v. Knorr*, 942 F.2d 1217, 1221 (7th Cir. 1999).

## A. *Franks* hearing

A defendant is entitled to a hearing to challenge the veracity of a search warrant, so long as he "makes a

substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 328 U.S. 154, 155-56 (1978). We agree with the Government that Zambrella failed to fulfill the requirement of making a substantial preliminary showing that the affiant in this case, Detective John Meznarick, knowingly and intentionally, or with reckless disregard for the truth, made a false statement in the search warrant.

As we noted in *United States v. Whitley*, 249 F.3d 614 (7th Cir. 2001), the "*Franks* decision did not define 'reckless disregard for the truth,' other than to suggest that the standard required more than mere negligence on the part of the affiant." *Whitley*, 249 F.3d at 621 (emphasis added). In this case, the evidence presented at the suppression hearing overwhelmingly supports the Government's argument that the affiant, Detective Meznarick, did not act recklessly when he cited what later turned out to be two factual errors (date of phone conversation, name of identifying officer) in his affidavit. Instead, Meznarick held a good faith belief, based on Detective Mort's statements and the label on the cassette tape, that the information set forth in his affidavit was entirely true.

At the suppression hearing, Meznarick explained that his statement regarding the date of the telephone call reflected information imparted to him by Detective Mort. Mort had informed Meznarick that the phone call took place on August 21, 2000. And, according to Meznarick, the date label on the copy of the cassette tape read "August 21, 2000," apparently confirming the date on which the

phone conversation was recorded. Supp. Hr'g Tr. at 20.[6] And, as far as the voice identification issue was concerned, Meznarick was told that Lieutenant Walling (another officer involved in the investigation) had identified the voice on the tape to be Zambrella. *Id.* at 32.

Because Meznarick had been informed by Detective Mort that the cassette tape was recorded on August 21, 2000, and that Walling had identified the voice on the tape, Meznarick had a sound basis for setting forth those facts in his affidavit. Any errors that were inadvertently included in Meznarick's affidavit were, at worst, the result of mere negligence. Zambrella has thus fallen far short of establishing that Meznarick exhibited a reckless disregard for the truth, much less that he knowingly or intentionally made a false statement.

Zambrella's argument in support of a *Franks* hearing fails for the additional reason that there is no reason to believe that including the correct date (August 13, 2000 rather than August 21, 2000) or the correct identifying officer (Whalen rather than Walling) would have made a difference in the judge's decision to issue the warrant. Because neither of the alleged errors was critical to the finding of probable cause, no *Franks* hearing was necessary in this case. *Franks*, 438 U.S. at 155; *United States v. Maro*, 272 F.3d 817, 821 (2001).

---

[6] It was not until a week prior to the suppression hearing that Meznarick learned that the actual date of the phone conversation was August 13, 2000. Supp. Hr'g Tr. at 21. Thus, at the time that he submitted the affidavit to the court, Meznarick truly believed, based on all information available to him (Mort's statement and label on the cassette tape), that the telephone call had taken place on August 21, 2000. *Id.* at 22 ("When you swore under oath that the 21st was the actual date of the call, were you telling the truth as you knew it?" "Yes.").

Finally, we note that Zambrella's repeated requests for a *Franks* hearing were properly denied because the trial court had previously resolved Zambrella's challenge to the search warrant affidavit. At the suppression hearing, the trial court had ample opportunity to assess and weigh Detective Meznarick's explanation of the information set forth in his affidavit. And, after hearing all of the evidence, the court adopted the Government's position that the affidavit supporting the warrant did not contain any fatal flaws, and that the warrant was entirely proper. Because the suppression hearing effectively served the purpose of a formally designated *Franks* hearing in this case, there was no reason for the court to waste its valuable and precious time revisiting a problem already raised by Zambrella and resolved by the court. The district court did not err in denying Zambrella's request for a *Franks* hearing.

B.  Motion to continue sentencing

Zambrella's contention that the district court abused its discretion when it denied his motion for a continuance to "clean up" the issue of his 1990 conviction is similarly without merit. Despite Zambrella's steadfast claim that he was convicted of simple possession of cocaine, rather than possession of cocaine with intent to deliver, the record is abundantly clear. See May 18, 1990 Plea Hearing Tr. at 5-11.

At sentencing, when arguing for the lesser charge (mere possession of cocaine), Zambrella relied on an alleged uncertified photostatic copy of what was designated as a Cook County Circuit Court's "Notification of Felony Disposition" form that he presented to the court. In the form, an unidentified person had filled in the "convicted under" section of the Notification as "Pssn. Con. Sub." (i.e.,

simple possession)—without any accompanying explanation or proof of documentation from the Cook County authorities, much less any letter of transmittal from the Circuit Court referring to the alleged court document. Zambrella contends that this uncertified paper which he refers to as a document "created serious doubt as to the status of his 1990 conviction" and thus he was entitled to a continuance to clarify the issue before sentencing. Zambrella's Br. at 14. We disagree, for this altered "Notification" was itself inherently suspect.

Moreover, it must be pointed out that not until the very moment of truth, on the very date of sentencing, did Zambrella submit his alleged court document, entitled a "Notification," that purportedly supported his prior conviction was for simple possession. Sentencing Hr'g Tr. at 10. Thus, it is obvious that the Government neither had the time nor the opportunity to investigate the issue, much less submit evidence of the possible forgery.

Given that Zambrella presented this seemingly fraudulent document to the court for the first time on the very morning of his sentencing, while standing before the court, his request for a continuance is even more suspect. As it turns out, Zambrella's disclosure of the allegedly "revised" Notification—two minutes before the moment of decision (sentencing)—prevented the Government from obtaining what would have conclusively settled the issue of the 1990 conviction at that time—namely, a transcript of the plea hearing concerning Zambrella's prior drug offense for possession with intent to distribute. From that transcript, which has now been made part of the record, it is abundantly clear that, in 1990, Zambrella was in fact convicted of possession with intent to distribute cocaine, rather than mere simple possession (as Zambrella claimed). The transcript of the May 18, 1990 plea hearing held in Cook County Circuit Court reads as follows:

Court:         "Mr. Zambrella, your attorney tells me you wish to plead guilty to the charge of possession of controlled substance with intent to deliver, is that correct?"

Zambrella: "Yes, sir."

Court:         "Has your attorney had an opportunity to discuss with you your rights under the law and the consequences of pleading guilty to this charge?"

Zambrella: "Yes."

Court:         "What is your plea to the charge of possession of controlled substance with intent to deliver?"

Zambrella: "Guilty."

Court:         "Before I accept your plea of guilty, I want to be sure you understand the legal rights you have and the rights you give up when you plead guilty. If you don't understand anything I say, please stop me and ask me any questions you have . . . . The charge against you is on or about January 12, 1989, in Cook County, Illinois, you, Taurus Zambrella, committed the offense of possession of controlled substance with intent to deliver . . . . Do you understand the charge against you?

Zambrella: "Yes, sir."

Court:         "Is that the charge you wish to plead guilty to?"

Zambrella: "Yes, sir."

Court:         "The law provides certain penalties were you convicted of the charge against you . . .

you could be sentenced anywhere from a minimum of four years . . . to a maximum of fifteen years . . . . And you also could be fined up to two hundred and fifty thousand dollars for this offense, or you could be both fined and sentenced . . . . Do you understand all of the possible penalties?"

Zambrella: "Yes, sir."

. . .

Court:        "Do you still wish to plead guilty?"

Zambrella: "Yes, sir."

Court:        "Do you understand you have the right to plead not guilty and require the State to prove you guilty beyond a reasonable doubt?"

Zambrella: "Yes."

Court:        "Do you understand when you plead guilty you give up your right to a trial of any kind . . . . Do you understand that?"

Zambrella: "Yes."

. . .

Court:        "You give up the right to have a jury trial. A jury trial is made [up] of twelve men and women chosen in part by you and your lawyer. . . Do you understand what a jury is and what it does?

Zambrella: "Yes, I do."

Court:        "I have a jury waiver here, is that your signature?"

Zambrella: "Yes."

. . .

Court:       "Jury waive will be accepted and made a permanent part of the record. Have any threats of any kind been made to you to get you to plead guilty?"

Zambrella: "No."

Court:       "Has anyone forced you to plead guilty?

Zambrella: "No."

Court:       "Are you pleading guilty of your own free will?

Zambrella: "Yes."

Court:       ". . . [H]as anyone made any promises to you about what I would or would not do if you plead guilty?"

Zambrella: "No."

             . . .

Court:       "Mr. Zambrella, knowing the nature of the charge, the possible penalties, and your rights under the law, do you still wish to plead guilty to the charge of possession of controlled substance with intent to deliver?"

Zambrella: "Yes."

Court:       "The Court finds the defendant understands the nature of the charge against him . . . [and that] defendant is pleading guilty knowingly, voluntarily . . . the Court accepts the defendant's plea of guilty to possession of controlled substance with intent to deliver, enter judgment on that finding."

1990 Plea Tr. at 5-11.

Had the district court granted Zambrella's motion for a continuance, Zambrella would have succeeded in his efforts to put off his moment of reckoning—all based on his mischaracterization to the district court of his prior criminal record. Despite Zambrella's concentrated efforts to rewrite and erase portions of his criminal history through an attempted fraud on the court, the record is eminently clear that on May 18, 1990, in Cook County Circuit Court, he knowingly pled guilty to possession with intent to distribute. Thus, we are unsympathetic to his efforts to postpone the sentencing hearing, and hereby hold that it was well within the bounds of the sound discretion of the district court to deny the requested continuance in this case.

AFFIRMED.

CUDAHY, *Circuit Judge*, concurring in the judgment. The majority deals properly with the *Franks* hearing issue. The other issue is whether the district court should, in its discretion, have granted a continuance to obtain a sentencing transcript with respect to Zambrella's prior drug offense to support an increase in sentence of some fourteen years. It seems to me that we are only lending credence to Zambrella's complaint by obtaining and relying here on the very transcript that Zambrella sought, to support a decision that there was no need for the district court to consult the same transcript. *See* maj. op. at 12-14.

A true Copy:

        Teste:


                    _____
                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*