In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-4277

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LESTER LEMONS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 01-CR-41—**Lynn Adelman**, *Judge.*

ARGUED APRIL 10, 2002—DECIDED SEPTEMBER 12, 2002

Before RIPPLE, MANION, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Responding to a two-car traffic accident in West Allis, Wisconsin (a suburb of Milwaukee) in the early morning hours of February 24, 2001, police were told that Lester Lemons, a passenger in one of the involved automobiles, had flashed a gun in the immediate aftermath of the accident. Upon questioning, Lemons denied possessing a gun but consented to a pat-down of his person. Pursuant to that frisk, police discovered a sweat sock in his pocket containing twelve bullets. Separately, another officer observed a 9 mm bullet on the rear seat of the vehicle in which Lemons had been a passenger. A further search of the vehicle produced a Sig Sauer 9 mm P228 pistol wrapped in a red knit cap and

stuffed between the driver and passenger seats of the vehicle.

A grand jury subsequently indicted Lemons, who had a prior felony conviction (battery to a law enforcement officer), for two violations of the felon-in-possession statute, 18 U.S.C. § 922(g)(1): possession of the gun (Count One) and the ammunition (Count Two), both of which had previously traveled in interstate commerce. R. 1. Lemons moved to dismiss the indictment (R. 17, 19), arguing that application of the felon-in-possession statute to his intrastate possession of a weapon and ammunition that, at some previous time, had crossed state lines was beyond the limited authority bestowed on Congress by the Commerce Clause of the Constitution. U.S. Const. art. I, § 8, cl. 3. Magistrate Judge Goodstein and Judge Adelman rejected Lemons' argument. R. 38, 52. Ultimately, Lemons entered into a Rule 11(a)(2) plea agreement pursuant to which he conditionally pleaded guilty to Count One while reserving the right to challenge the validity of his conviction under the Commerce Clause. R. 77. The district court sentenced him to a term of seventy-seven months in prison. R. 71.

The Sig Sauer pistol discovered in Lemons' possession was not manufactured in Wisconsin. Consequently, there is no dispute that, at some previous point in time, the pistol crossed state lines. However, the record does not reveal when that occurred. In a thorough and well-written set of briefs, Lemons contends that the Sig Sauer's crossing of state lines at some unknown time prior to his purely local possession of the gun on the occasion of his arrest is not enough of a nexus to interstate commerce to bring it within the Commerce Clause authority of Congress.

As Lemons acknowledges, in *United States v. Bass*, 404 U.S. 336, 92 S. Ct. 515 (1971), the Supreme Court indicated that a firearm's prior movement in interstate commerce

would suffice to demonstrate that an individual had received the gun in or affecting commerce for purposes of the statutory forerunner to section 922(g)(1). That statute, 18 U.S.C. § 1202(a)(1), imposed a criminal penalty on any felon who "receives, possesses, or transports" a firearm "in commerce or affecting commerce." The Court, rejecting the government's contention that a link to interstate commerce need only be proven with respect to the transport prong of the statute, construed it to require proof of a nexus to interstate commerce irrespective of whether the defendant had received, possessed, or transported the weapon. *Id.* at 347-50, 92 S. Ct. at 522-24. It came to that conclusion, in significant part, so as to avoid the dramatic intrusion upon state criminal authority that would have been presented if no such nexus requirement were read into the statute. *See id.* at 349-50, 92 S. Ct. at 523-24. With respect to the receipt prong of the statute, the Court was satisfied that if the weapon had previously traveled in interstate commerce, that prior movement would suffice to meet the nexus to interstate commerce that the statute required. *Id.* at 350-51, 92 S. Ct. at 524. In that respect, the Court believed that the receipt prong had a "[s]ignificantly broader" reach than either of the other two prongs of the statute. *Id.* at 350, 92 S. Ct. at 524. Implicit in that observation was the notion that the transport and possession prongs of the statute might require more of a nexus to interstate commerce than a prior crossing of state lines.

Subsequently, however, in *Scarborough v. United States*, 431 U.S. 563, 577, 97 S. Ct. 1963, 1970 (1977), the Court concluded that Congress intended to impose "no more than a minimal nexus requirement" on the possession prong of the statute. Thus, in the Court's view, proof that the firearm had at some earlier point in time moved across state lines would suffice to show that the defendant possessed the gun in or affecting commerce, even if

the interstate movement was not contemporaneous with the defendant's possession. *See id.* at 577, 97 S. Ct. at 1970 ("Congress sought to reach possessions broadly, with little concern for when the nexus with commerce occurred."). In short, the Court rejected any notion that the statute might require proof of a more substantial connection with interstate commerce vis à vis a felon's possession of a firearm than it did with respect to his receipt of the weapon. *Id.* at 575 & n.11, 97 S. Ct. at 1969 & n.11. "Congress was not particularly concerned with the impact on commerce except as a means to insure the constitutionality of [the statute]," the Court observed. *Id.* at 575 n.11, 97 S. Ct. 1969 n.11.

Lemons correctly points out that in both *Bass* and *Scarborough*, the Supreme Court was principally concerned with construing congressional intent vis à vis the required nexus; the Court did not explicitly consider whether the nexus it found the statute to require would suffice to bring the criminalized activity within the reach of congressional Commerce Clause authority. Yet, the constitutional question was not far from the Court's mind in either case. As is evident from *Bass*, the Court plainly wanted to avoid a construction of the statute that would work a dramatic alteration of the federal-state balance in the field of criminal law. 404 U.S. at 349-50, 92 S. Ct. at 523-24; *see also Scarborough*, 431 U.S. at 568, 97 S. Ct. at 1966. At the same time, as the opinion in *Scarborough* reflects, the Court was aware that Congress itself was concerned about the constitutionality of its enactment. *Id.* at 575 & n.11; 97 S. Ct. at 1969 & n.11. Therefore, although the precise question before the Court in both *Bass* and *Scarborough* was statutory, one cannot accurately say that constitutional considerations played *no* role in the Court's analysis. That the Court viewed prior movement of the firearm across state lines as an adequate link to interstate commerce for statutory

purposes at the least suggests that the Court viewed that minimal nexus as sufficient to avoid an obvious constitutional problem. *See United States v. Lewis*, 100 F.3d 49, 52 (7th Cir. 1996). The Court, after all, has long made it a practice to avoid construing statutes in such a way as to make them constitutionally suspect. *E.g.*, *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 407-08, 29 S. Ct. 527, 535-36 (1909); *see United States v. Lopez*, 514 U.S. 549, 562, 115 S. Ct. 1624, 1631 (1995).

Still, Lemons argues that the Court's more recent opinion in *Lopez*, which struck down the Gun-Free School Zones Act, 18 U.S.C. § 922(q), requires proof that one's possession of a gun is commercial activity which has a substantial impact on interstate commerce before Congress may criminalize it pursuant to the Commerce Clause. This point is driven home further, he suggests, by the Court's opinions in *United States v. Morrison*, 529 U.S. 598, 120 S. Ct. 1740 (2000), which found that the Violence Against Women Act, 42 U.S.C. § 13981, exceeded Congress's Commerce Clause authority, and *Jones v. United States*, 529 U.S. 848, 120 S. Ct. 1904 (2000), which construed the federal arson statute, 18 U.S.C. § 844(i), not to reach owner-occupied homes that are not used for any commercial purpose.

Yet, in the course of finding the Gun-Free School Zones Act unconstitutional, *Lopez* noted, *inter alia*, that the statute lacked a jurisdictional element "which would ensure, though case-by-case inquiry, that the firearm possession in question affects interstate commerce." 514 U.S. at 561, 115 S. Ct. at 1631. By way of contrast, the Court cited the forerunner to section 922(g), which *Bass* had construed to require proof of just that kind of nexus to interstate commerce. *Id.* at 561-62, 115 S. Ct. at 1631. Because 922(g) itself contains a jurisdictional element, and because the Supreme Court in *Bass* and *Scarborough* suggested that prior movement of the firearm in interstate

commerce would suffice to meet that element, we have, in the wake of *Lopez*, repeatedly rejected Commerce Clause challenges to application of the felon-in-possession statute. *See, e.g.*, *United States v. Mitchell*, 299 F.3d 632 (7th Cir. 2002); *United States v. Wesela*, 223 F.3d 656, 659-60 (7th Cir. 2000), *cert. denied*, 531 U.S. 1174, 121 S. Ct. 1145 (2001); *Lewis*, 100 F.3d at 50-53; *United States v. Bell*, 70 F.3d 495, 497-98 (7th Cir. 1995).

Lemons argues that *Lopez* effected far more of a sea change in the Supreme Court's Commerce Clause juris- prudence than we have been willing to acknowledge. With- in the *Lopez* framework, he reasons, Congress might be able to reach intrastate firearms possession when that possession has a commercial character and also has an explicit connection with or effect on interstate commerce. But section 922(g)(1), to the extent it merely requires a showing that the firearm moved across state lines at one point in time, is insufficient in Lemons' view to ensure such a meaningful nexus to interstate commerce. And the un- disputed facts in this case, he points out, establish only that the Sig Sauer pistol he possessed crossed into Wisconsin after its manufacture at some indeterminate moment in time—possibly years before it was discovered in his posses- sion. That showing is insufficient, in Lemons' view, to establish a genuine connection with or effect upon inter- state commerce. *See United States v. Kuban*, 94 F.3d 971, 977-79 (5th Cir. 1996) (DeMoss, J., dissenting in part), *cert. denied*, 519 U.S. 1070, 117 S. Ct. 716 (1997); *United States v. Chesney*, 86 F.3d 564, 574-82 (6th Cir. 1996) (Batchelder, J., concurring), *cert. denied*, 520 U.S. 1282, 117 S. Ct. 2470 (1997); *United States v. Coward*, 151 F. Supp. 2d 544, 548- 55 (E.D. Pa. 2001), *remanded on other grounds*, 296 F.3d 176 (3rd Cir. 2002); *see also United States v. Bishop*, 66 F.3d 569, 590-603 (3rd Cir. 1995) (Becker, J., dissenting in part) (federal carjacking statute), *cert. denied*, 516 U.S. 1032, 116 S. Ct. 681 (1995), and *cert. denied*, 516 U.S. 1066, 116 S. Ct. 750 (1996).

This court, and for that matter its sister circuits, have already rejected Lemons' construction of *Lopez* and its progeny vis à vis the felon-in-possession statute. We are bound by the ample Seventh Circuit precedent on this point. If, indeed, *Lopez*'s rationale calls into doubt our construction and application of section 922(g)(1), it is for the Supreme Court to so hold.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-97-C-006—9-12-02