# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3756

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

LAWRENCE L. OLSON,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03-CR-051-S-1—**John C. Shabaz**, *Judge.*

———————

ARGUED APRIL 7, 2004—DECIDED MAY 16, 2005

———————

Before FLAUM, *Chief Judge*, and WOOD and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Lawrence Olson, convicted of being a felon in possession of a firearm, and for possession of marijuana with intent to distribute, makes various challenges to his conviction and sentence. However, we find that the search warrant for Olson's premises was supported by sufficient probable cause, and uphold the constitutionality of 18 U.S.C. § 922(g)(1) based on our prior decision in *United States v. Lemons*, 302 F.3d 769 (7th Cir. 2002). But because the district court failed to make factual findings as to whether Olson, in a prior conviction for possession of a

controlled substance, possessed those drugs for his own personal use or with an intent to distribute, we find its relevant conduct determination insufficiently supported, and vacate Olson's sentence and remand his case for resentencing.

## I.  BACKGROUND

Inspector Bambi Tomas of the State Line Area Narcotics Team (SLANT) swore out an affidavit on March 5, 2003, seeking a warrant to search Olson's home for drugs. To establish grounds for issuing the warrant, the affidavit stated that a "concerned citizen" had informed Tomas in November 2002 that Olson sold cannabis out of his Brodhead, Wisconsin home and stored large quantities of the drug in his outbuildings and junked vehicles on his property.

The affidavit further stated that Tomas had learned, on the same day as the warrant application, that Joseph Olson (defendant Olson's nephew, hereinafter "Joseph") had attempted to steal Olson's marijuana supply. Joseph had been arrested by the Rock County Sheriff's Department for being a party to armed robbery and aggravated battery. Subsequent to the arrest, Tomas interviewed Joseph, learning that he had gone to Olson's home to "rip off his stuff." Joseph then clarified that by "stuff" he meant marijuana. He said that he intended to steal Olson's keys by any means necessary and to break into a safe where Olson kept large quantities of the drug. Joseph told Tomas he had seen as much as one pound of marijuana in Olson's bedroom on March 3, 2003, as well as several guns in the residence. He also stated that Olson was a convicted felon.

The affidavit then stated that, upon review of "confidential intelligence records" at the SLANT office, Tomas "found several reports relating to possible drug trafficking involving Lawrence Olson." Finally, the affidavit noted that Tomas ran a criminal history check on Olson, finding several ar-

rests and convictions for possession with intent to deliver THC, possession of THC and cocaine, and possession of drug paraphernalia.

Based on these facts contained in Tomas's affidavit, the Rock County Circuit Court issued the requested warrant. Pursuant to the warrant, SLANT agents searched Olson's residence and premises, finding numerous firearms and approximately 1,283 grams of marijuana.

On April 24, 2003, a federal grand jury sitting in the Western District of Wisconsin returned a three-count indictment against Olson. In Count 1, Olson was charged with being a felon in possession of five firearms in violation of 18 U.S.C. § 922(g)(1). Count 2 charged him with possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Count 3 stated that Olson's property was subject to forfeiture as a result of Count 2 of the indictment.

Olson moved to dismiss the felon in possession of a firearm charge, contending that 18 U.S.C. § 922(g)(1) is unconstitutional, and to suppress evidence seized from his premises pursuant to a defective search warrant. Magistrate Judge Stephen L. Crocker filed a Report and Recommendation recommending that both motions be denied. The district court adopted the magistrate judge's recommendations and denied both motions. Olson then pled guilty to Counts 1 and 2 pursuant to a written plea agreement, in which he reserved the right to appeal the district court's denial of his motions to dismiss and suppress evidence.

Olson was sentenced to 87 months in prison on October 8, 2003. In calculating Olson's criminal history score for purposes of determining sentence under the United States Sentencing Guidelines, the district court assessed one criminal history point for Olson's conviction in a Rock County Wisconsin Circuit Court Case (No. 95 CF 304B) for possession of marijuana. On appeal, Olson challenges the denial

of his motions to dismiss and suppress evidence, as well as the calculation of his criminal history category for purposes of sentencing.

## II.  ANALYSIS

### A.  Probable Cause Supported Search Warrant

Olson first argues that Tomas's affidavit in support of the search warrant failed to establish probable cause, therefore requiring the suppression of all evidence obtained through the execution of that warrant. "Whether an affidavit established probable cause is reviewed *de novo.*" *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003).

Before issuing a search warrant, an issuing officer must determine whether probable cause exists for doing so. *United States v. Walker*, 237 F.3d 845, 850 (7th Cir. 2001). "In determining whether probable cause exists, an official must consider the totality of circumstances." *United States v. Brack*, 188 F.3d 748, 755 (7th Cir. 1999) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Probable cause sufficient to support a warrant exists where "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). When those "known facts and circumstances" used to support a finding of probable cause are derived from a confidential informant's (CI) tip, the legitimacy of a probable cause determination turns on that "CI's reliability, veracity and basis of knowledge." *United States v. Johnson*, 289 F.3d 1034, 1038 (7th Cir. 2002). To assess that credibility, this court asks whether the informant: (1) had firsthand knowledge; (2) provided sufficient details; (3) relayed information which was subsequently corroborated; and (4) testified at a probable cause hearing. *Id.* at 1038-39.

The government argues that the information provided by Joseph and memorialized in the Tomas affidavit provided a reliable basis for a finding of probable cause and issuance of the warrant. Indeed, the information that Joseph relayed to Tomas was a firsthand account of what he had seen in Olson's residence. Furthermore, the information was of sufficient detail, describing large quantities of marijuana stored in Olson's safe and the presence of a pound of marijuana in Olson's bedroom, as well as several guns in the residence as a whole, that he had observed only two days earlier. *Cf. United States v. Peck*, 317 F.3d 754, 756-57 (7th Cir. 2003) (finding that a search warrant did not establish probable cause where a CI, though asserting that she was the defendant's girlfriend, failed to divulge details such as where in the home the drugs would be located, the total amount of drugs in the home, the frequency with which the defendant sold drugs, or defendant's physical attributes). With respect to whether the information provided was corroborated, the government cites Tomas's review of confidential intelligence records at the SLANT office that yielded several reports linking Olson to drug trafficking, and her criminal history check on Olson, which was prompted by Joseph's revelation that Olson was a convicted felon and revealed that Olson had been convicted of numerous felonies involving controlled substance violations. The government also notes that Tomas had already personally received information in November 2002 indicating that Olson was storing large quantities of marijuana in outbuildings and junked vehicles located on his property.

This, however, cannot end our analysis of Joseph's credibility. Joseph was not just an informant, but a newly-arrested informant, and as such merits a greater dose of skepticism when assessing his credibility. *See Williamson v. United States*, 512 U.S. 594, 607-08 (1994) ("A person arrested in incriminating circumstances has a strong incentive to shift blame or downplay his own role in comparison

with that of others, in hopes of receiving a shorter sentence and leniency in exchange for cooperation."). Toward that end, Olson cites *United States v. Koerth*, 312 F.3d 862 (7th Cir. 2002).

In *Koerth*, several factors conspired to render the factual offerings of a newly arrested informant insufficient to establish probable cause. There, the self-incriminating nature of the arrestee's information could best be described as "weak"; the arrestee, despite his undisputed availability, was not presented to the warrant-issuing judge for a demeanor review; and police took no steps to corroborate the arrestee's story. *Koerth*, 312 F.3d at 867-68. Olson rightly notes that there are similarities between his case and that of *Koerth*. In both cases, a search warrant was procured based upon assertions by a newly arrested informant who had never been presented to the warrant-issuing officer. There are, however, factual differences as well—differences sufficient to rescue Olson's warrant from the fate suffered by the *Koerth* warrant.

Joseph's admission that he intended to steal drugs from the defendant constitutes a statement made against his penal interest, and as such carries with it a presumption of reliability. *See, e.g., United States v. Harris*, 403 U.S. 573, 583 (1971) ("Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search."); *United States v. Barnes*, 909 F.2d 1059, 1069 (7th Cir. 1990) (finding support for informant's credibility in the fact that proffered information was made against informant's penal interest); Fed. R. Evid. 804(b)(3). Joseph's statements went beyond the non-narcotic impetus for his arrest—the armed robbery and aggravated assault of the defendant (his uncle)—inculpating him further by confessing a motive to steal drugs. This admission exposed Joseph as more culpable than originally suspected—no longer just a violent robber, but also a member, in some

capacity, of the drug trade. Such statements compounding his problems were self-inculpatory, not exculpatory.

Olson nonetheless attempts to rebut this presumption of reliability by insisting that Joseph's admission was nothing more than a naked attempt to mitigate his culpability through currying the favor of the police. A motive to curry favor, however, does not necessarily render an informant unreliable. Indeed, even informants "attempt[ing] to strike a bargain with the police [have] a strong incentive to provide accurate and specific information rather than false information about [a defendant's] illegal activity." *Koerth*, 312 F.3d at 870.

Also distinguishing the case at bar from *Koerth* is the amount of corroboration to the informant's account—here there is some, while in *Koerth* there was none. In addition to the information gleaned from Joseph, Tomas's affidavit disclosed several items tending to corroborate that account. First, the affidavit notes that a "concerned citizen" had reported that Olson sold marijuana and stored it in outbuildings and junked cars on his premises. The corroborative weight of this assertion is, however, compromised by the affidavit's failure to indicate how Tomas obtained this information, whether she knew the identity of the concerned citizen, or even the basis of that citizen's knowledge. Similarly, though confidential SLANT reports, serving as the second corroborative tidbit, purported to link Olson to drug trafficking, the affidavit made no mention of what the reports said, the sources from which they were compiled, or the recency of the events memorialized therein. On both accounts, such details could have, and should have, been explained. Because they were not, the corroborative weight of each is slight.

Likewise, little weight can be given to the final corroborative piece—the check on Olson's criminal history that yielded several old drug convictions and one recent drug arrest. Alone, a record check cannot serve to corroborate an

informant's account. *United States v. Peck*, 317 F.3d 754, 757 (7th Cir. 2003). Nonetheless, and also like the other items proffered by the affidavit, it does retain some corroborative value. When assessed on an individual basis, each bit here may not provide much, but any one would still be greater than that proffered in support of the *Koerth* warrant (none). And while the weight of each item when assessed separately may be slight, together they suffice to corroborate Joseph's story; and, when viewed under the "totality-of-the-circumstances" standard, *Illinois v. Gates*, 462 U.S. 213, 238 (1983), altogether provide enough to establish probable cause. *See also United States v. Quintanilla*, 218 F.3d 674, 677 (7th Cir. 2000) (holding that doubtful cases should be resolved in favor of upholding the warrant).

In any event, the warrant would be saved by the good faith exception. "An officer's decision to obtain a warrant is *prima facie* evidence that he or she was acting in good faith." *Koerth*, 312 F.3d at 868. A defendant may rebut this *prima facie* case by presenting evidence establishing either that: (1) the warrant issuing officer "wholly abandoned his judicial role" and failed to "perform his 'neutral and detached' function," serving "merely as a rubber stamp for the police"; or (2) the affidavit submitted in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 914, 923 (1984). Olson does not suggest that the issuing officer abandoned his judicial role. Rather, he argues that the affidavit was patently lacking in indicia of probable cause. As we have already found that the warrant was sustained by sufficient probable cause, our response to Olson's argument here should be clear. But even assuming probable cause was lacking, sufficient indicia of suspicion were present in the affidavit to invoke the good faith exception—namely, what Tomas perceived to be Joseph's statement against penal interest placing marijuana in Olson's home, the "concerned

citizen's" tip, confidential SLANT reports linking Olson to drug trafficking, and the results of a criminal history check on Olson. Equipped with these assertions, the affidavit in support of the warrant to search Olson's house was not so lacking in indicia of probable cause as to render reliance upon it unreasonable, and there is no basis to suppress the evidence seized from Olson's premises.

## B.  18 U.S.C. § 922(g)(1) Is Constitutional

Next, Olson contends that 18 U.S.C. § 922(g)(1), the statute prohibiting the possession of firearms by felons, is unconstitutional. Section 922(g) makes it "unlawful for any person—(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." We have held that the statute's requirement that the firearm be "shipped or transported in interstate or foreign commerce" constitutes a jurisdictional element that justifies Congress's passage of the provision pursuant to its powers under the Commerce Clause (U.S. CONST. art. I, § 8, cl. 3). *See United States v. Lemons*, 302 F.3d 769, 772 (7th Cir. 2002).

However, Olson argues that the mere fact that a firearm once traveled in interstate commerce before coming into the possession of a felon does not present a sufficient nexus to interstate commerce to allow Congress to exercise its Commerce Clause powers and make that possession unlawful. This court squarely rejected this argument in *Lemons*, 302 F.3d at 772-73, and we find no "compelling reason" to overturn our precedent here, *see Goshtasby v. Bd. of Trustees of the Univ. of Ill.*, 141 F.3d 761, 766 (7th Cir. 1998).

**C. Increase of Criminal History Category Based on Prior Conviction**

Under the United States Sentencing Guidelines, a defendant's criminal history score may not include any relevant conduct that is part of the instant offense. U.S.S.G. § 4A1.2(2) & Application Note 1. "To count as relevant conduct under the federal sentencing guidelines, a drug offense . . . must be part of the same course of conduct, or common scheme or plan, as the offense of conviction." *United States v. Wyss*, 147 F.3d 631, 632 (7th Cir. 1998) (citing U.S.S.G. § 1B1.3(a)(2)); U.S.S.G. § 1B1.3 Application Note 9. In essence, if the prior conviction stemmed from relevant conduct, then the defendant's criminal history score cannot be increased based on that prior conviction; if that conviction was not based on relevant conduct, then the criminal history score may be so increased. *See* U.S.S.G. §§ 4A1.1 & 4A1.2(2).

In the instant case, Olson pled guilty to possession of marijuana with intent to distribute. In pleading guilty, Olson conceded that he had been selling marijuana for the last 10 years—a charge contained in the government's presentence report. Therefore, for the purpose of grouping to determine the defendant's criminal history category, all prior convictions for the distribution/sale of marijuana which occurred in the last 10 years would not be counted toward his criminal history score. However, this court has clearly held that "[p]ossession of illegal drugs for personal use cannot be grouped with other offenses." *Wyss*, 147 F.3d at 632. Cognizant of these limitations, the district court at sentencing held that Olson's prior misdemeanor conviction in 1995 for possession of a controlled substance in Rock County Case No. 95 CF 304B could be used to increase Olson's criminal history score by one point. Olson asserts that this was error, arguing that the prior conviction constitutes relevant conduct to the instant offense.

The prior conviction at issue was handed down in state court in 1995. Though Olson was originally charged on February 27, 1995 with possession of marijuana with intent to deliver, the charge was reduced to mere possession of marijuana on April 11, 1995, and it was on that charge that Olson was convicted. The record of this conviction reveals that Olson was arrested when police found a bag of marijuana wedged between the seat cushions of a car's back seat, immediately next to where Olson had been sitting alone. The two other occupants of the car stated that the marijuana belonged to Olson, that they had seen it in his possession, and that they had smoked some of it with him. The total weight of the bag was just over two ounces, but within it the marijuana was divided into six smaller baggies of varying smaller weights.

Though we know that the district court held that this prior conviction did not constitute relevant conduct, we do not know exactly why. The sentencing transcript, which the government concedes is unclear on this point, suggests that the district court may have reached this conclusion by focusing simply on the name of the prior offense—possession of a controlled substance. Indeed, a focus confined to the conviction's moniker, which alone suggests possession for personal use devoid of an intent to distribute, could explain why the lower court concluded that that prior conviction did not constitute relevant conduct to the instant offense (possession with intent to distribute). This, however, cannot be the basis of the district court's determination, for, as the government also concedes, the sentencing guidelines direct courts to look to the underlying conduct of the offense, and not the name of the offense itself, when assessing relevant conduct. *See, e.g., United States v. Garecht*, 183 F.3d 671, 674 (7th Cir. 1999) (looking to underlying conduct of offense, rather than formal label of offense, in finding that a defendant's prior conviction for possession of cocaine with intent to distribute was relevant conduct to the instant offense of conspiracy to distribute marijuana, and therefore

not an amenable basis for enhancing defendant's criminal history category); *Wyss*, 147 F.3d at 632 (finding that cocaine purchased for resale is relevant conduct to conviction for possession of marijuana with intent to distribute). Thus, if the district court's conclusion did rely solely on the formal label of the conviction, remand would be necessary on that basis alone.

It is also possible—though we cannot know for sure due to the ambiguous nature of the sentencing transcript—that the district court did look to the underlying conduct giving rise to Olson's 1995 conviction when assessing his relevant conduct. When looking to the underlying conduct, however, it is not readily apparent how that conduct should be categorized. On the one hand, Olson possessed a small amount of marijuana (two ounces), suggesting that Olson held the drugs for his own personal use. If so, then the underlying conduct would be considered mere possession of a controlled substance, and would therefore not constitute relevant conduct to the instant offense of possession with intent to distribute. On the other hand, the subdivision of those two ounces of marijuana in six smaller baggies might suggest that Olson did intend to distribute the drugs, in which case the prior conviction would have been for relevant conduct, and therefore an improper basis for increasing Olson's criminal history score. The very uncertainty inherent in this underlying conduct accentuates the need for the district court to make specific factual findings regarding the underlying conduct giving rise to the prior conviction, thereby clearly providing the basis for its ultimate resolution of the relevant conduct question. Because no such factual findings were made here, we vacate Olson's sentence and remand his case to the district court for further factual findings to flesh out whether he possessed the drugs at the center of his conviction in case number 95 CF 304B merely for his personal use, or with an intent to distribute. As both parties had the opportunity to present evidence on this issue at the sentencing hearing, resentencing shall be based on the

existing record. *See Wyss*, 147 F.3d at 633 ("The government [is] entitled to only one opportunity to present evidence on the issue [of relevant conduct].").

Having remanded this matter for resentencing based on other grounds, we need not address the merits of Olson's challenge under *United States v. Booker*, 125 S. Ct. 738 (2005). We note, however, that when the district court imposes its new sentence upon remand, it must do so in accord with *Booker*, as *Booker* decidedly governs all sentences imposed after its date of decision. Indeed, after considering the cadre of factors and policy concerns memorialized by Justice Breyer's remedial opinion (*Booker*, 125 S. Ct. at 764-66) and 18 U.S.C. § 3553(a), the district court may find that the sentence that it found appropriate yesterday to be wholly unwarranted today.

### III.  CONCLUSION

For the reasons stated above, we VACATE Olson's sentence and REMAND his case to the district court for resentencing consistent with this opinion and the Supreme Court's recent decision in *United States v. Booker*, 125 S. Ct. 738 (2005).

A true Copy:

      Teste:

                                _____
                                *Clerk of the United States Court of*
                                   *Appeals for the Seventh Circuit*