In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-3808

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTONE C. HARRIS,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 04 CR 91—**Sarah Evans Barker**, *Judge.*

---

ARGUED MAY 3, 2006—DECIDED SEPTEMBER 27, 2006

---

Before FLAUM, *Chief Judge,* and EVANS and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* When a criminal defendant makes a substantial preliminary showing that the warrant to search his property was procured by intentional or reckless misrepresentations in the warrant affidavit, and such statements were necessary to the finding of probable cause, the Fourth Amendment entitles the defendant to a hearing to challenge the constitutionality of the search. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Antone Harris is serving a twenty-year prison sentence for possessing with intent to distribute more than fifty grams of cocaine base. In this appeal, Harris claims that the district court erred when it denied his request for a *Franks* hearing.

Because Harris has made a substantial preliminary showing that the search of his home was unlawful pursuant to the Supreme Court's decision in *Franks*, we conclude that the Fourth Amendment entitles him to a hearing to challenge the veracity of the affidavit that police used to procure the search warrant. Therefore, we reverse the judgment of the district court.

## I.  BACKGROUND

On March 25, 2004, an anonymous tipster called the Indianapolis, Indiana police department's "Dope Hotline" and reported that Anthony Harris and his brother, Trent Harris, were selling crack from a residence located at 2254 N. Goodlet Avenue.[1] Indianapolis police detective Michael Forrest was assigned to investigate the tip. The propriety of Forrest's investigation is the core of this appeal.

In his April 19, 2004 warrant affidavit, Detective Forrest stated that he conducted surveillance of the Goodlet residence beginning on March 29.[2] During the surveil-

---

[1] The police record of the anonymous call indicates that the caller identified one of the dealers as "Anthony" Harris. Defendant-appellant's first name is "Antone" Harris, and the parties assume the caller was referring to Antone Harris.

[2] Detective Forrest's warrant affidavit, in relevant part, states as follows:

> This affiant bases his belief on the following information: that within the past seventy-two (72) hours of April 19, 2004 a confidential, credible and reliable informant contacted this affiant and stated that within the past seventy-two (72) hours of April 19, 2004 he/she was personally in the residence located at 2254 N. Goodlet Av., Indianapolis, Marion County, Indiana and observed in the possession of
> (continued...)

lance, Forrest allegedly observed Antone and Trent Harris coming and going from the home. Forrest also discovered that animal control officials had recently contacted Antone Harris about dogs at his residence, and that he had a prior felony drug conviction. Also, according to Forrest, in the seventy-two hours preceding his warrant request, a confidential informant ("CI") contacted him and reported that while visiting the Goodlet residence, the CI observed Trent and Antone Harris possessing cocaine that was for sale. The

---

[2] (...continued)

Antone Harris B/M and Trent Harris B/M, a substance said informant believed to be Cocaine, an extract of Coca. Said informant was further told by Antone Harris B/M and Trent Harris B/M that the substance they had in their possession was in fact Cocaine, and was for sale. Said informant further stated that both Antone Harris and Trent Harris told the CI that they in fact lived at the residence. This affiant had previously received an anonymous tip from the Dope Hotline that both Antone Harris and Trent Harris were selling crack from this residence. This affiant has personally conducted surveillance on the residence located at 2254 N. Goodlet Av. and have [sic] observed both Antone Harris and Trent Harris coming and going from the residence. This affiant also checked recent police reports for that residence and found that a report was made on 4-2-04 by an animal control officer reference [sic] several dogs at this house. The person the officer talked to at the residence was Antone Harris B/M DOB 7-16-79 and Antone Harris listed his address as 2254 N. Goodlet Av. A check of Antone Harris's criminal history reveals that he has a C felony conviction for Possession of Cocaine and Trent Harris has a conviction for C felony Possession of Cocaine as well as an A felony conviction for Dealing Cocaine and a conviction for Dangerous Possession of a Firearm. The CI further stated to this affiant that several handguns are inside the residence and that both Antone Harris and Trent Harris always keep a firearm close to them when inside the residence.

CI also allegedly told Forrest that the brothers admitted that they lived in the Goodlet residence and that there were several handguns stashed in the home.

On April 19, based on the information provided in Detective Forrest's affidavit, the magistrate issued a warrant authorizing a search of the residence for cocaine and drug contraband. The next day, police officers executed the warrant and seized several firearms, cocaine base, and paraphernalia commonly used to cook and package crack cocaine.

Harris was charged in a superseding indictment with one count of possession with intent to distribute more than fifty grams of a mixture containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). Harris filed a pretrial motion to suppress evidence seized during the search, and he requested a *Franks* hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the veracity of the search warrant affidavit. Harris also filed a related motion for an *in camera* proceeding to compel disclosure of the CI's identity.

In his pretrial motion and request for a *Franks* hearing, Harris attacked the credibility of the affiant Detective Forrest as well as the existence and credibility of the CI. Harris argued that Detective Forrest's warrant affidavit contained materially false statements and that those false statements were necessary to a finding of probable cause. To support his contentions, Harris submitted an affidavit from an Indiana Department of Corrections official verifying that Harris's brother, Trent Harris, was incarcerated from March 26, 2004, through and including the date of the search. Thus, Harris maintained that it would have been impossible for either Detective Forrest or the CI to have seen his brother at the residence as alleged in the warrant affidavit. In addition, Harris submitted his own affidavit swearing that he was not present at the residence

within seventy-two hours of April 19 when the warrant was requested.

The district court ordered the government to file a supplemental affidavit from Detective Forrest detailing when he surveilled the Goodlet residence, describing how he came to believe that the second person with Antone Harris was Trent Harris, and accounting for the alleged misstatements contained in the search warrant affidavit. The parties do not dispute that the details in Detective Forrest's supplemental affidavit to the court differ from those in his warrant affidavit. In his supplemental affidavit, Forrest admitted that he could not recall the exact dates or times of his surveillance, that he (rather than the CI) initiated contact with Antone Harris, and that the CI's visit to the Goodlet residence occurred at least a week, rather than seventy-two hours, prior to the warrant request.

On January 4, 2005, the district court denied Harris's motion to suppress and request for a *Franks* hearing. The district court concluded that when compared with the supplemental affidavit, it was evident that Detective Forrest's initial search warrant affidavit contained three false and misleading statements and omissions. First, the warrant affidavit erroneously identified Trent Harris as the second individual with Antone Harris at times when, in light of his incarceration, it would have been impossible for him to have been present at the residence. Second, the warrant contained misleading information regarding the date of the CI's conversations with Antone Harris and the second individual about purchasing cocaine. Third, the warrant affidavit failed to include the dates of the Dope Hotline tip and of Detective Forrest's surveillance of the residence.

In addition, the district court concluded that Detective Forrest made the false statements and omissions either intentionally or recklessly. The court found that Detective Forrest failed to disclose that the anonymous tip was

made to the "Dope Hotline" almost a month before he sought the search warrant, and that his surveillance of the residence occurred sporadically and at unspecified times. The court also noted that Detective Forrest implied that the CI's visit to the residence occurred within seventy-two hours of his warrant request when, in fact, the visit had occurred at least a week prior to the request. The court thus concluded that Detective Forrest's "omissions, both individually and in their cumulative effect, suggest an intentional design to create an incorrect or at least misleading impression that the evidence relied upon to obtain the warrant was more current than it actually was."[3]

Although these findings satisfy two of the three *Franks* requirements, the district court determined that Harris was not entitled to a hearing because the misstatements in the search warrant affidavit were not material to the magistrate's finding of probable cause. After it disregarded the false statements and incorporated the omitted information, the court reasoned that there was sufficient evidence to establish probable cause. In so doing, the court relied upon the "Dope Hotline" tip, Detective Forrest's surveillance, information from the informant, and Harris's prior drug conviction.

Following a three-day jury trial in June 2005, Harris was convicted on one count of possession with intent to distribute more than fifty grams of a mixture containing cocaine base. The district court sentenced Harris to twenty

---

[3] Order Denying Pl.'s Mot. To Suppress (January 4, 2005). Because the district court accepted Harris's assertion that there were factual misrepresentations and omissions in the affidavit, the district court denied as moot the motion for an *in camera* proceeding to disclose the CI's identity. Because, as discussed below, we believe Harris is entitled to a *Franks* hearing, we will not review the trial court's ruling on the motion for an *in camera* proceeding.

years' imprisonment with ten years of subsequent super-vised release. Harris timely filed this direct appeal, and we now consider whether the court's denial of a *Franks* hearing violated Harris's Fourth Amendment right to be free from an unreasonable police search.

## II. ANALYSIS

We review the district court's denial of Harris's request for a *Franks* hearing for clear error. *Zambrella v. United States*, 327 F.3d 634, 638 (7th Cir. 2003). While our clear-error inquiry is factually based and requires that we give particular deference to the district court, *see United States v. Williams*, 945 F.2d 192, 195 (7th Cir. 1991), any legal determinations that factor into the court's ruling are reviewed de novo, *United States v. Adames*, 56 F.3d 737, 747 (7th Cir. 1995).

The Warrant Clause of the Fourth Amendment requires that, absent certain exceptions that are not applicable here, police must obtain a warrant from a neutral and disinter-ested magistrate before commencing a search. *See Jones v. Wilhelm*, 425 F.3d 455, 462 (7th Cir. 2005). The warrant shall not issue unless there is probable cause, as typically set forth in the warrant affidavit, to justify the search. Probable cause is established when, considering the totality of the circumstances, there is sufficient evidence to cause a reasonably prudent person to believe that a search will uncover evidence of a crime. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Whether a defendant may attack the veracity of a war-rant affidavit was first addressed by the Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). In *Franks,* the Court held that the Fourth Amendment requires an evidentiary hearing on the veracity of a warrant affidavit, and ultimately on the constitutionality of the search, when a defendant requests such a hearing and "makes a substan-

tial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [ ] the allegedly false statement is necessary to the finding of probable cause." *Id.*; *see also United States v. Jones*, 208 F.3d 603, 607 (7th Cir. 2000). We have interpreted the holding of *Franks* to also apply to omissions. *United States v. Williams*, 737 F.2d 594, 604 (7th Cir. 1984) (internal citations omitted). Therefore, a defendant may also challenge an affidavit by showing that the affiant intentionally or recklessly omitted material information. *See id.*; *see also Shell v. United States*, 448 F.3d 951, 958 (7th Cir. 2006); *United States v. Pace*, 898 F.2d 1218, 1232-33 (7th Cir. 1990).

Allegations of negligent or innocent mistakes contained in a warrant affidavit do not entitle a defendant to a hearing. Rather, to make a substantial preliminary showing, the defendant must identify specific portions of the warrant affidavit as intentional or reckless misrepresentations, and the defendant should submit sworn statements of witnesses to substantiate the claim of falsity. *See Franks,* 438 U.S. at 171. A court then considers the affidavit, eliminating any false statements and incorporating omitted material facts, and determines whether probable cause existed. *See United States v. Merritt*, 361 F.3d 1005, 1010 (7th Cir. 2004), *vacated and remanded in light of United States v. Booker*, 543 U.S. 220 (2005); *Pace*, 898 F.2d at 1232-33.

The district court concluded Detective Forrest's affidavit contained intentional or reckless misrepresentations, nonetheless it found that Harris was not entitled to a hearing because under the third *Franks* factor the misrepresentations were not necessary to the magistrate's probable-cause determination. The district court reasoned that four other facts set forth in the affidavit established probable cause: the CI had visited the home and observed cocaine for sale; police had received an anonymous tip

that crack was being sold from the home; Forrest had conducted surveillance of the residence; and Harris had a prior felony drug conviction.

Whether a warrant affidavit contains sufficient indicia of probable cause is a legal question that we review de novo. *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003). After excising the false statements and reviewing the omitted information that undermines a finding of probable cause, *see Merritt*, 361 F.3d at 1010, we conclude that Harris has made a substantial preliminary showing that the warrant affidavit was not sufficient to establish probable cause to search his home. First, in attacking the veracity of the warrant affidavit, Harris challenges the very existence of the CI. In light of Harris's pretrial motion, the district court directed the government to file a supplemental affidavit from Detective Forrest answering questions about his investigation and specifically about his conversations with the CI. The court then concluded, based on revised information included in the supplemental affidavit, probable cause existed to search the Goodlet residence. Here, the district court erred. Considering new information presented in the supplemental filing that supported a finding of probable cause was beyond the trial court's analytical reach. Rather, its consideration of new information omitted from the warrant affidavit should have been limited to facts that did not support a finding of probable cause. Those facts are as follows: that the tip was made almost a month before Detective Forrest requested the warrant; that the exact dates of the detective's surveillance were unknown; and that the CI's conversation with Harris about purchasing cocaine occurred at least a week before rather than within seventy-two hours of the April 19 warrant request. Allowing the government to bolster the magistrate's probable cause determination through post-hoc filings does not satisfy the Fourth Amendment concerns addressed in *Franks*. The opportunity to cross-examine an

officer who has intentionally or recklessly made false statements to procure a search warrant is an important aspect of a *Franks* hearing. "Because it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment." *Franks,* 438 U.S. at 165 (internal citations omitted). Therefore, because the affidavit reviewed by the magistrate did not contain the details in Forrest's supplemental filing that support a finding of probable cause, we will not consider them on appeal.

When an assertion of probable cause is based upon a confidential informant's tip, our totality-of-circumstances inquiry includes four factors: (1) the degree to which the informant has acquired knowledge of the events through firsthand observation; (2) the amount of detail provided; (3) the interval between the date of the events and the police officer's application for the search warrant; and (4) the extent to which the police have corroborated the informant's statements. *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002).

Here, the first two factors weigh in the government's favor because the CI's information does include some indicia of firsthand knowledge and credible detail. The CI stated that he or she had been in the Goodlet residence, observed several handguns in the home, and observed cocaine for sale. The third and fourth factors counsel against a finding of probable cause, however. After excising the false statement that the CI's visit to the home and subsequent conversation with Detective Forrest occurred within seventy-two hours of the warrant application, no temporal guidepost remains in the affidavit allowing us to determine whether the CI's information was stale. Stated differently, all that we know from the warrant affidavit is that at some unspecified time the CI allegedly visited the home and

observed crack for sale, and at some unspecified time thereafter the CI reported this information to Detective Forrest. Although the "[p]assage of time is less critical when the affidavit refers to facts that indicate ongoing criminal activity," *United States v. Spry*, 190 F.3d 829, 836 (7th Cir. 1999) (quoting *United States v. Pless*, 982 F.2d 1118, 1126 (7th Cir. 1992)), after omitting its falsities, there is little left in Detective Forrest's affidavit to suggest that there was ongoing criminal activity in the home.

As to the fourth factor, the district court concluded that the anonymous hotline tip, Forrest's surveillance, and Harris's prior drug conviction corroborated the CI's information. We disagree. An anonymous tip "alone seldom demonstrates the informant's basis of knowledge or veracity." *Alabama v. White*, 496 U.S. 325, 329 (1990). The anonymous tip in this case is no exception to the general rule. There is no indication in the warrant affidavit as to when the hotline tip was received, the identity of the tipster, or the basis of the tipster's knowledge. *See United States v. Olson*, 408 F.3d 366, 371 (7th Cir. 2005) (reasoning that the corroborative weight of an anonymous tip was compromised when the warrant affidavit failed to indicate how police obtained tip information, whether the officer knew the identity of the tipster, and the basis of the tipster's knowledge). Further, the tip indicates that "Anthony" Harris and Trent Harris were selling drugs from the Goodlet residence; but, as we now know, Trent Harris was incarcerated when the illegal activity was purportedly occurring. So the tip is not only insufficient to create probable cause, but it adds little corroborative value to the probable cause calculus because it contains misinformation that casts doubt on its credibility.

Also, Detective Forrest's surveillance of the residence does not corroborate that there was ongoing criminal activity. The only statement contained in the affidavit concerning Detective Forrest's surveillance is that he "observed both

Antone Harris and Trent Harris coming and going from the residence." The portion of the statement regarding Trent Harris must be excised, leaving merely a bare-bones statement that, at some undetermined time, Forrest observed Harris coming and going from the home. Yet Harris does not dispute that he lived in the Goodlet residence, and the fact that he was seen regularly leaving his home is not indicative of unlawful activity. The fact that Harris has a prior felony drug conviction, while having some corroborative value, is not dispositive because "[a]lone, a record check cannot serve to corroborate an informant's account." *Olson*, 408 F.3d at 372.

To be sure, we recognize that the whole may be more than the sum of the parts when assessing probable cause. In *Olson*, we found that the evidence corroborating an informant's otherwise weak account validated the search warrant. Here, on the other hand, there is little corroborative weight to the evidence remaining in the affidavit after the misrepresentations are severed. We also recognize that a search based upon a defective warrant affidavit may nonetheless be lawful if a police officer requested the warrant in good faith. *See Koerth*, 312 F.3d at 868 ("An officer's decision to obtain a warrant is prima facie evidence that he or she was acting in good faith."). However, the good-faith exception to the warrant requirement does not apply in cases, such as here, where the officer seeking the warrant was dishonest or reckless in preparing the affidavit. *See United States v. Dumes*, 313 F.3d 372, 380-81 (7th Cir. 2002). Because he has made a substantial preliminary showing that the warrant to search his home was constitutionally infirm and because the good-faith exception does not apply, Harris is entitled to a *Franks* hearing.

We note that our decision today is not a complete victory for Harris; he has only surmounted the initial hurdle of demonstrating that he is entitled to a *Franks* hearing. At the hearing, he must still demonstrate by a preponder-

ance of the evidence that the search warrant must be voided and the fruits of the illegal search suppressed. We do not know whether Harris will successfully carry that burden.

### III.  CONCLUSION

The judgment of the district court is REVERSED and REMANDED for proceedings in accordance with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*