NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 11, 2008
Decided June 12, 2008

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 07-2320

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee,*<br><br>    *v.*<br><br>FREDERICK T. GARNER,<br>    *Defendant-Appellant.* | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division.<br><br>No. 1:05CR00194-001<br><br>Larry J. McKinney,<br>*Judge*. |

**O R D E R**

A jury found Frederick Garner guilty of gun and drug charges after police discovered a loaded firearm and cocaine and marijuana in his home. *See* 18 §§ U.S.C. 922(g)(1), 924(c)(1)(A); 21 §§ U.S.C. 841(a)(1), 846. For these crimes Garner received a total sentence of 322 months' imprisonment. Garner's notice of appeal is timely, but his appointed counsel reports that there are no potentially meritorious issues upon which to rest this appeal and therefore seeks to withdraw. *See Anders v. California*, 386 U.S. 738 (1967). Garner, meanwhile, disagrees with his attorney and insists that his appeal has roots. *See* CIR. R. 51(b). We confine our review to the potential issues outlined in counsel's brief and Garner's response. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

Following a tip from an informant, law enforcement officers in Indianapolis seized approximately nine grams of cocaine from the home of Kevin Dunn in November 2005. Dunn confessed to Special Agent Daniel Schmidt of the DEA that the nine grams were all that remained of a larger two-ounce package that Dunn had purchased from Garner, his regular supplier, one week earlier. Dunn explained that he and Garner had maintained a steady business relationship for nearly five months, during which time Dunn had purchased cocaine from Garner on a weekly basis, typically at Garner's apartment. When asked to identify Garner, Dunn provided Garner's address and apartment number. Dunn also described the exterior of the apartment complex as well as the make, model, and color of Garner's two cars.

Agent Schmidt visited the address provided by Dunn in an effort to corroborate Dunn's statements. There he found an apartment complex and two cars matching Dunn's descriptions. Schmidt verified that one of the cars was registered to Garner. He could not verify ownership of the second car, though, because the license plate was displayed behind a heavily tinted rear window. Schmidt also investigated Garner's criminal history and uncovered multiple felony convictions, including one in 1999 for possessing cocaine.

Approximately a week later Dunn contacted Agent Schmidt to alert him that Garner had inquired about Dunn's interest in buying more drugs. Schmidt scrambled to set up a controlled buy, but, before he could do so, Garner arrived at Dunn's residence and delivered 62 grams of powder cocaine and 62 grams of crack in exchange for an initial payment of $400. Dunn then called Schmidt to report this latest sale and turned over the drugs.

Later that same day Agent Schmidt obtained federal warrants to arrest Garner and search his residence. In his supporting affidavit Schmidt summarized that day's drug transaction as well as his own contacts with Dunn, his corroboration of Dunn's information, and Garner's criminal history. Schmidt and his colleagues executed the search warrant that evening and detained Garner. After reciting the *Miranda* warnings, Schmidt took a seat at the kitchen table and discussed with Garner the possibility of cooperation. Garner admitted that he had a gun and ¾ of a kilogram of cocaine under his bed, and he confessed to selling powder cocaine and crack to Dunn earlier that day in exchange for an initial payment of $400 (which Schmidt found in Garner's pants pocket). According to Schmidt's testimony at trial, Garner's cooperation did not end there:

> Mr. Garner gave us the names of other individuals that he was in business
> with. He agreed to make controlled phone calls for us to try to set up other
> deals to do that night before we took him to jail. We attempted to contact

> some individuals; however, nobody was responding to his calls that night. But he admitted that he had dealt approximately three to five kilograms of cocaine with Mr. Dunn, that he could obtain three kilograms of cocaine for us that night from two or three of his sources, which didn't come to fruition, but we made attempts on.

A search of Garner's house yielded roughly 737 grams of cocaine—some of which was wrapped in his daughter's homework—57 grams of marijuana, a digital scale, and a loaded semiautomatic handgun.

Prior to trial Garner moved to suppress the evidence seized from his apartment. He argued that the search warrant was not supported by probable cause because Agent Schmidt had failed to corroborate adequately Dunn's information and, furthermore, Schmidt's affidavit of probable cause contained false or incomplete information that misled the court. The district court rejected both contentions. The court reasoned that Schmidt's affidavit established probable cause "on its face," and that no hearing was necessary to test the veracity of the affidavit, *see Franks v. Delaware*, 438 U.S. 154 (1978), because Garner had not "identified a single portion of the affidavit that is false" or "presented any evidence to support his arguments that Schmidt provided false information or omitted material information."

Garner also moved in limine for an order excluding as unfairly prejudicial any evidence at trial that two children were present in his apartment at the time of his arrest and that the cocaine was wrapped in his daughter's homework. The district court granted the motion in part and denied it in part. The court explained that "it is appropriate for witnesses to testify about where and how they found any drugs, including the fact that the drugs were wrapped in school paperwork." But the court reasoned that any testimony about the presence of children in the home was inappropriate because it had little or no probative value and presented a danger of unfair prejudice to Garner.

In his *Anders* submission, counsel first considers whether Garner could argue that the district court erred by denying his motion to suppress. For his part, Garner contends that Agent Schmidt did not sufficiently corroborate Dunn's information and, furthermore, that Dunn was not shown to be a reliable source because he had no history as an informant. Probable cause exists if the totality of circumstances is enough to convince a reasonably prudent person that a search will uncover evidence of a crime. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005). And we review a judge's determination of probable cause with "great deference." *United States v. McIntire*, 516 F.3d 576, 578-79 (7th Cir. 2008) (quotation marks and citation omitted). Where, as here, the affiant has relied on information from an informant, we evaluate the quality of that

information, the degree to which police officers corroborated it, the length of time between the events described by the informant and the application for a search warrant, and whether the informant personally appeared before the issuing judge to permit a judicial evaluation of his knowledge, demeanor, and sincerity. *Olson*, 408 F.3d at 370; *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002).

Dunn provided considerable detail to Agent Schmidt about the length of his relationship with Garner, the frequency and quantity of his purchases, the price he paid, the physical appearance of Garner's apartment and apartment complex, and the cars he drove. All of this is the stuff of first-hand observation. *See Koerth*, 312 F.3d at 866. Furthermore, Dunn's description of a drug-trafficking conspiracy that spanned a five-month period enhanced the reliability of his information because his statements were against his penal interest. *See United States v. Harris*, 403 U.S. 573, 583-84 (1971); *Olson*, 408 F.3d at 371; *United States v. Barnes*, 909 F.2d 1059, 1069 (7th Cir. 1990) . And Dunn's most-recent information was just hours old when Schmidt submitted his warrant application. Finally, Schmidt corroborated at least some of Dunn's statements and uncovered Garner's previous drug conviction. This factual predicate was more than enough to establish probable cause, and any argument to the contrary would be frivolous.

In any event, this potential issue is especially frivolous because, even if probable cause was absent, Garner could not possibly overcome the good-faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 923 (1984). An officer's decision to seek a warrant is prima facie evidence of good faith. *United States v. Otero*, 495 F.3d 393, 398 (7th Cir. 2007); *United States v. Mykytiuk*, 402 F.3d 773, 777 (7th Cir. 2005). A defendant may rebut this presumption by demonstrating that the issuing judge abandoned her neutral role and acted as a rubber stamp for the police, or that the affiant intentionally or recklessly misled the judge, or that the supporting affidavit is so lacking in indicia of probable cause that an officer's belief in its existence would have been patently unreasonable, or that the warrant itself is so facially deficient that the executing officers could not reasonably have believed it to be valid. *See Leon*, 468 U.S. at 923; *Otero*, 495 F.3d at 398. Garner failed to develop any argument in the district court to rebut the presumption of good faith. As the district court recognized, the *Leon* arguments made by Garner were merely an extension of his assertion that probable cause was absent—as if to suggest that good faith is impossible in the absence of probable cause. Likewise, the record offers us no reason to conclude that the issuing judge acted improperly or that the officers who executed the warrant did so without a reasonable, good-faith belief that probable cause existed.

Counsel next considers whether Garner could argue that the evidence presented at trial is insufficient to sustain his convictions—another nonstarter. In order to prevail, Garner would have to establish that, after viewing all the evidence in the light most

favorable to the government, no rational jury could have found guilt beyond a reasonable doubt. *See United States v. Humphreys*, 468 F.3d 1051, 1054 (7th Cir. 2006); *United States v. Gougis*, 432 F.3d 735, 743-44 (7th Cir. 2005). We need not rehearse the elements of each of Garner's offenses here. Given our deference to the jury's verdict and the considerable evidence in this case, we agree with counsel's conclusion that it would be frivolous for Garner to try to prevail on this potential issue.

Equally untenable is the potential argument that the district court erred by refusing to exclude, as unfairly prejudicial, evidence that the cocaine was wrapped in Garner's daughter's homework. *See* FED. R. EVID. 403. The Supreme Court has instructed that "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Of course, all probative evidence is prejudicial to a criminal defendant; to warrant exclusion under Rule 403, its probative value must be slight in comparison to its inflammatory nature. *Gougis*, 432 F.3d at 743. That Garner had wrapped the cocaine in his daughter's homework is potentially inflammatory—but it is also probative of possession, which the government emphasized to the jury at trial: "I would . . . ask you to pay very careful attention to where the cocaine was found in the bedroom and how it was packaged because another reason that we know that Mr. Garner is responsible for this cocaine is that part of the cocaine, which was loose, was wrapped up in the math homework of his eight year old daughter . . . ." Garner could have conceded possession in his earlier motion in limine, which would have rendered the evidence irrelevant, but he chose not to. Indeed, Garner challenged at trial whether the drugs found in his apartment belonged to him. The homework evidence was therefore relevant to a determination of ownership. And any argument that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice would be frivolous. *See United States v. Toro*, 359 F.3d 879, 884-85 (7th Cir. 2004) (declining to upset "a deliberative and reasoned decision of the district court" to admit probative evidence that also carried a danger of prejudice).

Counsel also considers, but rejects as frivolous, a possible claim that the district court erroneously instructed the jury to presume that each witness testified truthfully. What the court actually said, without any objection from Garner, is that the jurors should "reconcile" the testimony of the witnesses "on the theory that all are accurate and truthful, if you can; but if you cannot, then you must determine whom you will believe and whom you will not believe and what is the truth." As counsel recognizes, we have evaluated a substantively indistinguishable instruction and rejected the argument that it called upon jurors to presume each witness to be truthful. *See United States v. Hyman*, 741 F.2d 906, 909-10 (7th Cir. 1984). Moreover, we have held that it *is* permissible to instruct jurors that witnesses enjoy a presumption of truthfulness so long as that instruction does not undermine other

instructions conveying the defendant's presumption of innocence, the government's burden of proof, and the role of the jury as the final arbiter of witness credibility. *See United States v. Hall*, 854 F.2d 1036, 1039-41 (7th Cir. 1988). And in this case, even if we could characterize the court's instructions as creating a presumption of truthfulness, we would not conclude that the instruction was erroneous when measured against the charge as a whole. *See id.*; *Hyman*, 741 F.2d at 909-10.

Finally, counsel contemplates a challenge to the reasonableness of Garner's overall prison sentence. Because Garner's sentence falls within the correctly calculated guidelines range, we would presume it to be reasonable on appeal. *Rita v. United States*, 127 S. Ct. 2456, 2462-63 (2007); *United States v. Gama-Gonzalez*, 469 F.3d 1109, 1110 (7th Cir. 2006). Counsel cannot come up with any reason to upset that presumption—and for good reason. After correctly calculating the guidelines range, a sentencing judge's only remaining task before imposing a sentence is some meaningful consideration of the factors set forth in 18 U.S.C. § 3553(a). *See Gall v. United States*, 128 S. Ct. 586, 596-97 (2007); *United States v. Laufle*, 433 F.3d 981, 987 (7th Cir. 2006). Here the court addressed, in detail, the harm inflicted by Garner's offenses, his history of violence, the nature and circumstances of his offenses, the need to promote respect for the law and provide just punishment, and Garner's "disrespect for others and their safety." *See* 18 U.S.C. § 3553(a). In light of these factors, the court deemed appropriate a sentence at the top of the guidelines range. Any argument that this sentence was unreasonable would be unsuccessful.

For the sake of thoroughness, we note that *Kimbrough v. United States*, 128 S. Ct. 558 (2007), is of no consequence to Garner. The sentencing court measured Garner's total drug quantity using the drug equivalency tables found in Application Note 10 to the 2006 version of U.S.S.G. § 2D1.1. Once converted, his cocaine, crack, and marijuana amounted to the equivalent of 5,017 kilograms of marijuana, which corresponds to a base offense level of 34. *See* U.S.S.G. § 2D1.1(c)(3) (2006). But even if the drug equivalency tables treated crack in the same manner as cocaine Garner still would have been accountable for 3,841 kilograms of marijuana, well within the range of 3,000 to 10,000 kilograms that corresponds to a base offense level of 34. *See id.* Therefore, any argument that Garner was adversely affected by the guidelines' differing approach to the two substances would be frivolous.

We therefore GRANT counsel's motion to withdraw and DISMISS Garner's appeal.