# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-1874

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JUSTIN L. HOFFMAN,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:06-CR-0085—**Robert L. Miller, Jr.**, *Chief Judge.*

———————

ARGUED NOVEMBER 28, 2007—DECIDED MARCH 17, 2008

———————

Before EASTERBROOK, *Chief Judge*, and FLAUM and WOOD, *Circuit Judges*.

FLAUM, *Circuit Judge.* The work of two first-time informants eventually led to Justin Hoffman's arrest and subsequent search of his home. As the informants had indicated, Hoffman dealt drugs, and a jury ultimately found him guilty of various drug and gun-related offenses. Before his trial began, Hoffman attempted to suppress the incriminating evidence found in his home on the grounds that the affidavit supporting the search warrant contained false statements that were made with a

reckless disregard for the truth. The district court denied his motion, and we affirm.

## I. Background

Sergeant Juan Lora of the South Bend Police Department met with Stephanie Schulman and Patrick Reppert (who were dating at the time) in late June 2006. The purpose of their meeting was to discuss whether they would serve as confidential informants in an ongoing drug investigation. Neither of them had ever served as confidential informants for the South Bend Police Department. They agreed to cooperate, and identified four individuals from whom they could order, purchase, and/or sell narcotics. With respect to each of these individuals, Schulman and Reppert identified various general characteristics, including age, race, work, and residence. One such individual was Justin Hoffman. The police department was not investigating him at the time. The informants provided Hoffman's physical description, workplace, vehicles, residence, and the areas of his apartment where he kept cocaine. The last bit of intelligence was known to Reppert because he claims to have purchased cocaine from Hoffman at his apartment approximately every two weeks for some time, and observed a kilogram of cocaine in Hoffman's apartment within the previous two weeks.

Lora began verifying the information that Reppert and Schulman provided. He did so in three ways. First, he reviewed police intelligence files which confirmed that narcotics-related complaints had been made against some of the identified individuals. Second, the information in these files confirmed the physical descriptions,

places and positions of employment, and types of narcotics sold with respect to these individuals. Third, Lora spoke with other officers regarding some of the individuals that Reppert and Schulman had identified, and they corroborated that, based on their own investigations, the physical descriptions that were provided were correct.

After this verification process, Lora proceeded to focus his investigation on Hoffman, since he was suspected of being the largest dealer. Lora went to Hoffman's workplace and photographed his vehicle. Both the place of employment and the vehicle (a silver Lexus) were as the informants had described. He also researched Hoffman's driving history and discovered that he was a habitual traffic violator and that his license was permanently suspended. Lora then contacted Hoffman's probation officer, verified his address, and learned that he had recently tested positive for narcotics use.

Lora then decided to use the informants to purchase cocaine from Hoffman. First, on June 27, 2006, outside the presence of police officers, Reppert contacted Hoffman and ordered a quantity of cocaine to be delivered the next day. Schulman then contacted him later that day to pin down the details of the deal. The next day, the informants met Lora and other officers at 6:00 AM near Hoffman's residence. They conducted a recorded telephone call at 7:30 AM. During the course of the conversation, Hoffman confirmed that Schulman needed "the 11, 11 plus 2" and "a whole 14."[1] He stated that the item

---

[1] These numbers presumably refer to grams of cocaine. "A whole 14" would be 14 grams, or a half ounce.

would be "split up and ready to go for [her]," and that he was "gonna get started on that then." Hoffman indicated that he would leave his home at approximately 8:10 AM. Schulman then placed another call to Hoffman wherein he agreed to leave in approximately 10 minutes to drive to meet her at a particular location.

Ten minutes later, officers observed Hoffman leaving his apartment and entering his silver Lexus. They followed him and then executed a traffic stop because he failed to signal a turn. He was ordered out of the car and a dog sniff eventually led to police finding two plastic baggies of cocaine under the front seat. Hoffman was subsequently arrested. Once in jail, Hoffman made a failed attempt to arrange for his father to remove incriminating items from his apartment.

Lora then obtained a search warrant for Hoffman's residence. In his affidavit supporting the request for a search warrant, Lora represented that he was working with "reliable" confidential informants. He explained what information they had given him, and how he went about verifying some of their assertions. Also, he described the nature of the recorded phone calls, emphasizing that the informants were able to order cocaine from Hoffman as they had claimed. He then delineated the events leading up to the arrest, including following Hoffman in his car, pulling him over, and the dog sniff. Lora then concluded the affidavit by listing what items he believed, based on the information presented, he would find in Hoffman's residence. As a result of the search, officers discovered cocaine, marijuana, rolling papers, a stolen handgun, ammunition, evidence of domain, a surveillance system, a digital scale, and $1,200.

Hoffman was indicted in July 12, 2006. The grand jury charged him with two counts of possessing cocaine with intent to distribute under 21 U.S.C. § 841(a)(1), one count each of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1), being a drug user in possession of a firearm under 18 U.S.C. § 922(g)(3), knowingly possessing a stolen firearm under 18 U.S.C. § 922(j), and possessing a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c). Hoffman entered a guilty plea on two counts but then withdrew his plea. On December 4, 2006, he moved for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to suppress the evidence recovered from the execution of the search warrant. The district court denied this motion, and his trial began on January 29, 2006. The district court dismissed the count related to knowingly possessing a stolen firearm, and the jury subsequently found him guilty on four of the five remaining counts.[2] On April 11, 2007, Hoffman was sentenced to 63 months' imprisonment[3] and five years of supervised release.

## II. Discussion

We have one issue before us: whether the district court was correct in denying Hoffman's motion for a *Franks*

---

[2] Hoffman was acquitted on the count related to being a drug user in possession of a firearm.

[3] This sentence fell at the upper-end of the range recommended by the United States Sentencing Guidelines. The district court believed this was justified, in large part, because of Hoffman's attempt to obstruct justice by directing family members to destroy evidence vital to his prosecution.

hearing. The Supreme Court held in *Franks v. Delaware* that intentionally or recklessly submitting false statements in an affidavit supporting a search warrant violates the Fourth Amendment. In order to obtain such a hearing, a defendant must make a substantial preliminary show-ing that a "false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). A defendant may also challenge an affidavit by demonstrat-ing that the affiant intentionally or recklessly omitted material information. *United States v. Harris*, 464 F.3d 733, 738 (7th Cir. 2006).

We do not disturb a district court's determination regarding the denial of a *Franks* hearing unless it was clearly erroneous. *Id*. at 737. Hoffman submits that the affidavit was flawed in two respects. First, he takes issue with Lora's declaration that he "has been contacted by and worked with *reliable* confidential informant[s] (CI) in the past 48 hours whose information has been found to be reliable and credible related to drug trafficking and traffickers in St. Joseph County." This statement is prob-lematic in Hoffman's view because Reppert and Schulman had never before served as informants, and the basis of their reliability is not explicitly discussed in the affidavit. Second, Hoffman notes that the recorded telephone conversation—which was mentioned in the affidavit as a successful attempt to order cocaine—did not contain any specific reference to narcotics, and so there was no reason to believe that he was dealing drugs from his residence.

Each of Hoffman's arguments is unavailing. Lora's statements regarding the informants' reliability were not

made with a reckless disregard for the truth because many of their statements identifying other dealers in the area were corroborated. To be sure, Lora looked up information regarding other individuals they had named, verified that their descriptions matched, and that drug-related complaints had been made against them. He also went to Hoffman's workplace, photographed his vehicle, and spoke with his probation officer. Most importantly, Lora confirmed that Reppert and Schulman could purchase cocaine from Hoffman, as evidenced through their recorded conversations. It is clear that this was not an instance of an officer taking a first-time informant at her word. Moreover, while neither party to the recorded conversation uttered the word "cocaine," Hoffman did state that he was going to have the item "split up and ready to go," and he made sure that Schulman still wanted "the 11, 11 plus 2" and "a whole 14." Adding these integers leads us to conclude that Hoffman intended to deliver 27 grams of cocaine, which is almost exactly the quantity that was discovered in his vehicle. Thus the contents of the telephone call, as it was represented in the affidavit, only added to the informants' credibility.

Even if we assume, *arguendo*, that the challenged statements were made with reckless disregard for the truth, and were therefore excised from the affidavit, probable cause still existed given what remained in the affidavit. This is because probable cause was not solely based on the informants' statement that Hoffman was trafficking narcotics from his residence, but also on the arranged meeting with the informant and the presence of large quantities of narcotics found on him shortly after leaving his home. In particular, the affidavit established that officers recovered approximately 27 grams of cocaine from Hoffman's vehicle shortly after two phone con-

versation arranging for the delivery of that same quantity of an "unidentified" item. In addition, officers saw Hoffman leave his apartment at approximately the time he said he would leave in his conversation with Schulman. Finally, the informants—whether or not they were neophytes[4] or reliable—claimed that they had observed cocaine in Hoffman's apartment within the past 48 hours, correctly identified his address and appearance, and told officers that they could arrange for him to deliver cocaine.

It is true that the presence of narcotics in a defendant's car does not, by itself, establish probable cause to search his home, even if the car is registered to his address. *United States v. Dickerson*, 975 F.2d 1245, 1249-50 (7th Cir. 1992). However, participation in drug trafficking activities can create probable cause to search a participant's residence, even without direct evidence that drug-related activity is occurring there, because "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991) (quoting *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986)). Indeed, the traffic stop and eventual discovery of nearly thirty grams of cocaine in separate baggies would lead an issuing judge to reasonably

---

[4] On some level, Hoffman seems to recoil at the notion that he was convicted, in part, based on information provided by first-time, as opposed to veteran, informants. But it is obvious that every veteran informant was at some point participating in their first case. What is important under such circumstances is that officers make a conscientious effort to verify the information that the informant provides, which is precisely what Lora did here.

infer that Hoffman was involved in drug trafficking, and that the activity occurred in his home. Since there was no evidence that Hoffman was using another residence for his drug business, and since he was found with an amount of cocaine in his car that was almost identical to the quantity that he stated he was preparing *in his home* just minutes before, it was reasonable to find probable cause to search his apartment even if the challenged statements were eliminated.

### III. Conclusion

For the foregoing reasons, we AFFIRM Hoffman's conviction.