> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with
> Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted June 29, 2011[*]
Decided June 30, 2011

**Before**

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 11-1110

| | |
|---|---|
| LEE CATLEDGE, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 09 C 5065 |
| CITY OF CHICAGO, et al., *Defendants-Appellees.* | Samuel Der-Yeghiayan, *Judge.* |

## O R D E R

Lee Catledge alleges that four Chicago police officers detained him on a public street without justification and then searched his parked car without probable cause or consent. He sued the officers and the City under 42 U.S.C. § 1983, but the district court dismissed his complaint before service of process on the assumption that it fails to state a claim, *see* FED.

---

[*] The appellees were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Accordingly, the appeal is submitted on the appellant's brief and the record. *See* FED. R. APP. P. 34(a)(2)(C).

R. CIV. P. 12(b)(6). We conclude that Catledge has stated claims arising under the Fourth Amendment, and thus we vacate the judgment and remand for further proceedings.

Because the district court dismissed the suit at the pleading stage, we accept as true the facts alleged in the complaint and construe them in the light most favorable to Catledge. *See Wilson v. Price*, 624 F.3d 389, 391 (7th Cir. 2010). At all relevant times, Catledge worked as a messenger for a courier service in Chicago, and he frequently parked his car on the 800 block of West Madison Street while waiting for pickup and delivery instructions. In August 2008, after Catledge had been parked in his usual spot for about two minutes, he heard a helicopter hovering overhead. He guessed that the unmarked helicopter belonged to the Chicago police because, he says, a similar police helicopter had hovered over his home in the past. To encourage the helicopter to move along, Catledge "pointed his video camera" at it. The helicopter did eventually fly away, but minutes later a Chicago police officer arrived at the scene "on a marked City of Chicago All Terrain Vehicle (ATV) with lights flashing" and asked Catledge to get out of his car and turn over identification.

Catledge complied and asked the officer if there was a problem. The officer replied that a woman had complained that Catledge was filming her. Catledge acknowledged having a video camera but explained that he was not filming anyone and that, in any event, the camera was not functional. Catledge then offered the camera for inspection. He also provided his employer's contact information and explained that he did not carry a cell phone. During this exchange the officer conceded that it was not illegal to film from the street but nonetheless insisted on investigating Catledge for "suspicious activity."

Three more officers soon arrived. Catledge's car was now penned in by Chicago police vehicles, and the officers searched it without his permission. When Catledge asked why his car was being searched, one of the officers echoed the earlier invocation of "suspicious activity" and added that the "Patriot Act" justified their actions. Catledge asked to see a search warrant but was told that a warrant was unnecessary because he was committing a crime. Catledge objected to that accusation, citing the first officer's admission that videotaping from the street is not illegal and repeating that his camera didn't work. The officers ignored Catledge's objection and told him to "stand there and be quiet" while they continued searching his car. One officer also countered that Catledge would want the police to investigate if his sister or mother had complained of being filmed.

Inside Catledge's car one of the officers found batteries, a power cord, and a two-way radio. When she pointed out these items to her colleagues, Catledge volunteered that the batteries were for his camera and the cord was for his computer. That explanation

prompted one officer to retort, "yeah right," and another to suggest that the radio actually was a phone and that Catledge had lied when he denied carrying a cell phone.

According to Catledge, the officers became increasingly confrontational as the encounter drew to a close. One officer called him a "sick creep" and accused him of harassing the woman who complained about his videotaping, but Catledge persisted that he had done nothing wrong. The officers eventually left the scene, commenting that Catledge was lucky that he wasn't facing charges.

Catledge filed a complaint in the district court claiming that the City and its police officers had violated his rights under the Fourth Amendment. (He also included supplemental, state-law claims, but those have been abandoned on appeal.) The district court initially dismissed the suit because he did not pay the filing fee. Catledge appealed that decision, and we instructed the district court to let him proceed *in forma pauperis*. *See Catledge v. City of Chicago*, No. 10-1362 (7th Cir. Sept. 23, 2010). On remand the district court entered a minute order dismissing Catledge's complaint before it was served on the defendants. The court's short order asserts that Catledge had "failed to state a cognizable legal claim" but does not explain that conclusion.

On appeal Catledge challenges the dismissal and argues that his complaint adequately claims that he was detained and his car searched in violation of the Fourth Amendment. We agree. Having reviewed the complaint de novo, we conclude that Catledge has included sufficient allegations to "'state a claim for relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The rules of procedure do not require anything more.

We start with Catledge's claim that the Chicago police officers detained him unlawfully. The Fourth Amendment, of course, is not implicated in consensual encounters where citizens are free to turn and walk away from the police. *United States v. Drayton*, 536 U.S. 194, 200 (2002); *United States v. Douglass*, 467 F.3d 621, 623 (7th Cir. 2006). But when a reasonable person would no longer feel free to leave, what started as a consensual encounter becomes a Fourth Amendment seizure that, at a minimum, requires reasonable suspicion. *See United States v. Clements*, 522 F.3d 790, 794 (7th Cir. 2008); *United States v. Tyler*, 512 F.3d 405, 410 (7th Cir. 2008); *United States v. Adeyeye*, 359 F.3d 457, 462 (7th Cir. 2004). Here, on the facts described by Catledge, there can be no doubt that a Fourth Amendment seizure occurred. Perhaps the defendants can argue that a reasonable person in Catledge's position would have felt free to ignore the officer who arrived with lights flashing and asked him to step out of his car and hand over identification. Yet even if the first officer did not detain Catledge, the others certainly did when they escalated the

encounter by blocking his car into the parking space. That action would "have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business," *see Michigan v. Chesternut*, 486 U.S. 567, 573 (1988), and thus constituted a stop under the Fourth Amendment. *See United States v. Gross*, 624 F.3d 309, 315 (6th Cir. 2010); *United States v. Burton*, 441 F.3d 509, 511 (7th Cir. 2006); *United States v. Hendricks*, 319 F.3d 993, 1000 (7th Cir. 2003).

The real question, then, is whether the officers had reasonable suspicion to conduct an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968). To do so they needed an objective basis to conclude that Catledge was committing or about to commit a crime. *See United States v. Cortez*, 449 U.S. 411, 417 (1981); *Jones v. Clark*, 630 F.3d 677, 682 (7th Cir. 2011). But, if the factual representations in Catledge's complaint are accurate, there was nothing remotely suggesting that his behavior was unlawful. Observing someone sitting in a legally parked car, without more, cannot justify a *Terry* stop. *See Gentry v. Sevier*, 597 F.3d 838, 845-46 (7th Cir. 2010); *United States v. Packer*, 15 F.3d 654, 658-59 (7th Cir. 1994); *United States v. Jefferson*, 906 F.2d 346, 348 n.3 (8th Cir. 1990). And, here, the only other information available was an accusation from a woman that Catledge had filmed her. Catledge insists that the woman was wrong, but that doesn't matter. Even if the camera had been rolling when she was present, Catledge would not have been doing anything illegal. Videotaping in public is rarely unlawful. *See, e.g.*, Anita Allen, *Dredging up the Past: Lifelogging, Memory, and Surveillance*, 75 U. CHI. L. REV. 47, 63 (2008). And though an Illinois statute does prohibit nonconsensual video recording in homes and certain facilities like locker rooms, 720 ILCS 5/26-4, nothing in Catledge's complaint suggests that the officers reasonably could have suspected him of violating that law. In fact, according to Catledge, the first officer *conceded* that videotaping from Catledge's vantage was not illegal.

So Catledge states a claim that he was detained in violation of the Fourth Amendment. He also states a claim that the search of his car was unconstitutional. The officers justified their actions based entirely on Catledge's "suspicious activity" and a glib reference to the Patriot Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 (2001). The Fourth Amendment demands more. Even if the officers had reasonable suspicion to investigate the filming complaint, they still would not have been authorized to enter or search any part of Catledge's car unless they also reasonably suspected that he was dangerous or had access to a weapon. *See Arizona v. Gant*, 129 S. Ct. 1710, 1721 (2009) (citing *Michigan v. Long*, 463 U.S. 1032, 1049 (1983)); *United States v. Arnold*, 388 F.3d 237, 239 (7th Cir. 2004). But these officers rummaged through Catledge's car looking for any and all evidence without the faintest indication that he was armed or dangerous. And absent this risk of danger, the officers could not search Catledge's car without probable cause to believe that they would find contraband or evidence of a crime. *Gant*, 129 S. Ct. at 1721; *United States v. Williams*, 627

F.3d 247, 251 (7th Cir. 2010). Probable cause requires more than "bare suspicion," but at this stage in the litigation there is nothing in the record to suggest that the officers had anything more. *See United States v. Carmel*, 548 F.3d 571, 576 (7th Cir. 2008).

We acknowledge that the facts may not be as Catledge alleges and that with discovery it may become clear that the officers complied with the Fourth Amendment. But for now we must accept Catledge's version of events. The judgment is **VACATED** and the case is **REMANDED** for further proceedings.