**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 12, 2011
Decided July 22, 2011

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD D. CUDAHY, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 10-3650

| | |
|---|---|
| ALEXANDER C. GATZIMOS, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Indiana, |
| | Indianapolis Division. |
| *v.* | |
| | No. 1:04-cv-00740-LJM-JMS |
| MICHAEL GARRETT, et al., | |
| *Defendants-Appellees.* | Larry J. McKinney, |
| | *Judge.* |

**O R D E R**

Dr. Alexander Gatzimos appeals the grant of summary judgment on his Fourth
Amendment claims for illegal search and false arrest under 42 U.S.C. § 1983, and his claim
of false arrest under Indiana law. The district court concluded that both the search and the
arrest were proper because the police had valid warrants. Gatzimos argues that summary
judgment for the police was inappropriate because they obtained the warrants by
deliberately or recklessly misstating or omitting material facts at the probable-cause
hearing. We review a district court's grant of summary judgment de novo, and evaluate the
information that the police had at the time they sought the warrants in the light most
favorable to Gatzimos. *See Zellner v. Herrick*, 639 F.3d 371, 373, 378 (7th Cir. 2011). Taken in
this light, and considering only the statements from the probable-cause hearing that

Gatzimos agrees were truthful and complete, we conclude that the police set forth sufficient facts to establish probable cause.

In 2001 Michael Garrett of the Indiana State Police began suspecting that Gatzimos was distributing controlled substances for illegitimate purposes and asked detectives Michael Morris and Gretchen Yordy to investigate. Using an alias, Morris visited Gatzimos's office as a "patient" six times over nine months, and Garrett monitored the visits over a wire. At the first visit, Morris complained of pain in his lower legs. After examining Morris and speculating that he might be diabetic, Gatzimos prescribed Norco three times a day to relieve the pain. Norco, a combination of hydrocodone and acetaminophen, is a painkiller and a Schedule III controlled substance.

During the next four visits, Morris asked Gatzimos to renew his prescription for Norco, which Gatimos took to mean that the drug was alleviating Morris's still-ongoing leg pain. At one of these visits, Morris told Gatzimos that he borrowed OxyContin, another controlled substance, from someone after he ran out of his painkillers. Gatzimos prescribed more Norco so that Morris would not have to use another source of narcotics for his leg pain between appointments.

Three months later, during his sixth visit, Morris told Gatzimos that he now had no leg pain. When Gatzimos asked Morris why he was still taking Norco, Morris answered that he took the prescribed narcotic simply because he "liked it." Gatzimos noted in Morris's chart: "leg pain-resolved," but wrote Morris another prescription for Norco anyway, though at a slightly reduced dosage, to last three more months.

Yordy visited Gatzimos four times. She also used an alias, and asked for "diet pills," meaning amphetamines, to help her stay awake on long drives at night. Instead Gatzimos prescribed her methylphenidate—a Schedule II controlled substance also known as Ritalin—to keep her awake while driving and renewed her prescription at each additional appointment. Before prescribing her Ritalin, Gatzimos warned her that using the drug as a stimulant was ill-advised and that stopping for sleep breaks during long drives was the proper response to travel exhaustion.

Garrett testified about the results of the investigation at a probable-cause hearing. He sought an arrest warrant for Gatzimos for violating the Indiana Controlled Substances Act, IND. CODE § 35-48-4-2(a)(1), by prescribing controlled substances for illegitimate reasons. He also sought a search warrant for the doctor's office. At the hearing, Garrett testified that Yordy asked for a drug to keep her active or perked up, and Gatzimos prescribed her Ritalin. Consistent with Gatzimos's warning to Yordy that taking Ritalin was not the proper response to sleepiness, Garrett added that, based on his experience

investigating drug fraud, prescribing Ritalin to keep a person awake is illegitimate. Garrett also testified that Morris complained of pain in his lower legs during his first visit and that Gatzimos prescribed him hydrocodone. Garrett recalled that Morris reported no leg pain at several of his follow-up visits, and at one visit told Gatzimos that he wanted the narcotic, despite no leg pain, just because he liked it, but that Gatzimos always prescribed hydrocodone for Morris at each appointment.

At the probable-cause hearing, Garrett also compared Gatzimos's office practices to standard medical practices. He testified that Gatzimos preferred cash payments from his patients (in his experience, a common practice of doctors who illegitimately prescribe drugs), used pre-signed prescription pads (to his understanding, an unsound medical practice), and was suspected of improperly prescribing drugs to other patients. Finally, he stated that he had consulted with a doctor specializing in substance abuse who said that prescribing Ritalin to help a patient stay awake or hydrocodone for a patient no longer suffering pain was illegitimate.

The court found probable cause to search Gatzimos's office and to arrest him for dealing controlled substances. After the search and arrest, the Office of the Indiana Attorney General sought an emergency suspension of Gatzimos's medical license. The Medical Licensing Board held a hearing but voted against suspending his license. The board agreed that Gatzimos had some questionable prescribing practices warranting further investigation, but it found insufficient evidence of a clear and immediate danger to the community to justify an emergency suspension of his license. The criminal charges against Gatzimos were later dropped.

Gatzimos sued for, as relevant here, illegal search and false arrest, and Garrett moved for summary judgment arguing that the police had valid warrants. Gatzimos countered that the warrants were invalid because Garrett had intentionally, or with reckless disregard for the truth, misstated and omitted material facts from his testimony at the probable-cause hearing. As to omissions, he argued that Garrett neglected to testify that Gatzimos had examined Morris before prescribing narcotics at the first visit, that he prescribed Norco at later visits because Morris continued to experience pain, and that he wrote a lower-dose prescription for hydrocodone on the sixth visit (when, he admits, Morris stated that he had no leg pain) to "wean" Morris off the drug. Gatzimos also noted that the doctor Garrett consulted, and whose opinion he shared at the hearing, had been convicted of prescribing drugs illegally, but Garrett did not disclose this to the judge.

Gatzimos also argued that Garrett made a number of misstatements to the judge that he knew, or through his recklessness did not know, were incorrect. He testified that Yordy showed up without an appointment and was never examined, but Gatzimos

asserted that she always had appointments and was examined. Garrett testified that Morris told Gatzimos he had been "trading pills" when he took the pain-killer OxyContin, but Gatzimos maintained that Morris stated only that he "borrowed" the OxyContin because his prescription for Norco ran out. Garrett told the judge that Gatzimos violated medical licencing protocols by pre-signing his prescription pads but Gatzimos countered that pre-signing is a legitimate practice. Finally, Garrett testified that a number of other patients were suspected of fraudulently obtaining controlled substances from the doctor, an assertion that Gatzimos argued was unsubstantiated.

The district court concluded that there was probable cause to support the warrants and found no evidence that Garrett had intentionally or recklessly omitted or misstated material facts at the probable-cause hearing. The court agreed that Garrett erred in certain respects when he stated that: (1) Yordy did not make an appointment before her first visit, (2) Gatzimos did not examine Yordy or Morris before giving them prescriptions, and (3) there was a pattern of patients fraudulently seeking drugs from Gatzimos. But it concluded that these mistakes were not material to the probable cause finding because Garrett's other, accurate testimony that Gatzimos prescribed Ritalin and hydrocodone for illegitimate purposes was sufficient to establish probable cause. Since there was probable cause for the search and arrest, the court continued, Garrett was entitled to qualified immunity on the Fourth Amendment claims, and Gatzimos could not sustain a claim for false arrest under Indiana law.

On appeal Gatzimos renews his argument that the search and arrest warrants were invalid and that summary judgment was inappropriate. Repeating the misstatements and omissions that he identified for the district court, Gatzimos argues that Garrett's testimony at the probable-cause hearing was dishonest or recklessly mistaken. He also disputes the district court's conclusion that the warrants would have been justified even without the false testimony.

An arrest or search pursuant to a valid warrant is presumptively constitutional unless the officer seeking the warrant intentionally or recklessly misstated or omitted material facts to obtain the warrant, and there would not have been probable cause had the testimony been accurate. *See Franks v. Delaware*, 438 U.S. 154, 171-72 (1978); *United States v. Hoffman*, 519 F.3d 672, 675 (7th Cir. 2008); *Mannoia v. Farrow*, 476 F.3d 453, 458 (7th Cir. 2007); *Beauchamp v. City of Noblesville*, 320 F.3d 733, 742 (7th Cir. 2003). Even if Garrett seriously doubted the truth of his statements or failed to disclose information, the errors must also have been material or necessary to the probable-cause determination. *See United States v. Norris*, 640 F.3d 295, 302 (7th Cir. 2011); *United States v. Schultz*, 586 F.3d 526, 531-32 (7th Cir. 2009); *United States v. Robinson*, 546 F.3d 884, 888 (7th Cir. 2008). We assess materiality by eliminating false statements from the hearing testimony, incorporating any

omitted facts, and evaluating whether the resulting testimony still establishes probable cause. *See United States v. McDuffy*, 636 F.3d 361, 363 (7th Cir. 2011); *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010); *United States v. Pace*, 898 F.2d 1218, 1232-33 (7th Cir. 1990). Probable cause requires only "a probability or substantial chance of criminal activity, not a certainty that a crime was committed." *Beauchamp*, 320 F.3d at 743.

Gatzimos urges us to eliminate the following testimony from the probable-cause hearing: that Yordy's first visit was without an appointment; that Gatzimos never examined Yordy or Morris before prescribing drugs; that Morris denied leg pain on multiple visits; that Morris said he was "trading pills"; that Gatzimos's preference for cash payments and his use of pre-signed prescription pads were necessarily suspect; that there was a pattern of patients visiting Gatzimos to obtain drugs fraudulently; and that Garrett had consulted with a doctor who found Gatzimos's prescribing practices illegitimate.

But even if we eliminate all of this testimony, Garrett still presented the state judge with other, undisputed evidence that was sufficient to establish probable cause. First, Gatzimos concedes that Garrett accurately reported that he gave Morris another prescription for Norco at the sixth visit even though Morris told the doctor that he had no pain but wanted the Norco anyway simply because he "liked it." This presents at least a reasonable probability that Gatzimos illegitimately dispensed a controlled substance. *See United States v. Chube II*, 538 F.3d 693, 695 (7th Cir. 2008) (finding sufficient evidence to convict doctors who prescribed controlled-substance painkiller to patients who had "no real medical complaints and went to the Doctors' clinic solely to obtain" painkillers). Gatzimos responds that he wrote this prescription, admittedly not needed for pain, at a reduced dosage merely to "wean" Morris off the narcotic. But he offers no evidence that Garrett knew that a reduced dosage necessarily meant Gatzimos was "weaning" Morris off Norco or that "weaning" was a legitimate medical use in a pain-free patient. Also, Gatzimos concedes that Garrett correctly testified that he prescribed Ritalin to Yordy to keep her awake through long, late-night drives. He wrote this prescription multiple times, even though he knew that keeping a person awake is not a legitimate reason for prescribing Ritalin, as reflected in his warning to her that she should take breaks, rather than the drug, to keep her awake while driving. These facts were sufficient to show a reasonable probability of illegitimate prescribing practices.

Gatzimos argues that he had a good faith belief that he was prescribing drugs for legitimate medical purposes and that the state would not have been able to convict him if it had pursued the charges. But probable cause requires only that Garrett was aware of information that was sufficient to make a prudent person believe that Gatzimos had committed an offense. *See Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). Probable cause does not require sufficient evidence to convict or even evidence demonstrating that it

is more likely than not that Gatzimos committed a crime. *Id.*; *United States v. Roth*, 201 F.3d 888, 893 (7th Cir. 2000).

Although the parties also argue about whether Garrett is entitled to qualified immunity, these arguments are unnecessary because there was probable cause for the search and the arrest. Since there was probable cause, there was no constitutional violation, *see Jackson v. Parker*, 627 F.3d 634, 635 (7th Cir. 2010); *Suarez v. Town of Ogden Dunes*, 581 F.3d 591, 595 (7th Cir. 2009), and a qualified immunity defense is irrelevant, *Mucha v. Vill. of Oak Brook*, No. 10-2000, 2011 WL 489617, at *4 (7th Cir. Feb. 14, 2011).

The district court also correctly granted summary judgment to Garrett on the state-law claim for false arrest. Absence of probable cause is also required for a claim of false arrest under Indiana law, *see Row v. Holt*, 864 N.E.2d 1011, 1016 (Ind. 2007), and probable cause is present here.

AFFIRMED.